Peggy A. MARTIN and Bobbie Printup, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The HOUSING AUTHORITY OF the CITY OF ATLANTA and Tyrone Hinton, in his official capacity as Executive Director of the Housing Authority of the City of Atlanta, Defendants.

Civ. A. No. C79–1143A.

United States District Court, N. D. Georgia, Atlanta Division.

Order May 7, 1980.

On Motions May 8, 1980.

321

Carolyn S. Weeks, Debra A. Segal, Atlanta Legal Aid Soc., Inc., Claudia M. Tesoro, Atlanta, Ga., for plaintiffs.

Lenwood A. Jackson, Parks, Jackson & Howell, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is a suit by public housing tenants against the Atlanta Housing Authority, challenging the use of the Authority's grievance procedure. Pending before the court is plaintiffs' motion for class certification, filed June 29, 1979, which was initially opposed by defendants. Discovery with respect to that issue was extended at the request of the parties until April 4, 1980.

Plaintiffs have moved the court for class certification pursuant to Rule 23(b)(2) Fed. R.Civ.P. Plaintiffs' desire to represent the class of past, present and future public housing tenants who have been denied the use of the grievance procedure to pursue certain personal and property damage claims. Under Rule 23(a), the court may allow this action to proceed as a class action if (1) the class is so numerous that joinder of all members is impractical, and (2) there are questions of law or fact common to the class, and (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, the requirement of Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

The court finds that in this suit which seeks declaratory and injunctive relief against the Authority, the only viable objection to class certification raised by defendants concerns the numerosity requirement of Rule 23(a)(1). Specifically, plaintiffs aver that there are presently 60,000 persons residing in public housing operated by Authority and that at least 100 persons therein (in addition to future claimants) have been refused the use of the grievance procedure following denial of damage claims against Authority. Such facts would fulfill the numerosity requirement. *See* 3B Moore's Federal Practice, ¶ 23.05[1] (2nd ed. 1980); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). In objecting that plaintiffs cannot meet the numerosity requirement, defendants aver that they believe that only some 15 persons would actually fall within the alleged class. However, the court notes that plaintiff has made vigorous efforts through discovery to learn the number of such persons, and defendant has persistently failed or refused to make answers available. Defendant objected to a key interrogatory by arguing that it was unable to provide the information sought. It has refused a requested production of documents, urging tenant privacy as a justification. Since numerosity is the only real issue which defendant has raised, and since defendant has wittingly or unwittingly frustrated all efforts at precision, the court finds it appropriate to certify the class.

Varying slightly from the form requested by plaintiffs, the court will define the class as follows: All tenants who are or will be residing in public housing which is owned and operated by Defendant Authority, who have sustained or will sustain damage to their persons or property by reason of the alleged failure of Defendant Authority to maintain in decent, safe and sanitary condition the premises or project in which

they reside, and who have had or will have their claims for compensation for said damages denied in whole or in part by Defendant Authority, and who have been or will be refused use of the grievance procedure by Defendant Authority on the denial of their damage claims.

Accordingly, plaintiffs' motion for class certification is hereby GRANTED.

### ORDER

#### On Motions

ROBERT H. HALL, District Judge.

This suit was brought by public housing tenants seeking declaratory and injunctive relief against the Atlanta Housing Authority, class certification, and attorney fees. Jurisdiction is invoked under 28 U.S.C. §§ 1337, 2201 and 2202. By previous order of this court, plaintiffs' motion for class certification was granted and the class was defined as follows: All tenants who are or will be residing in public housing which is owned and operated by Defendant Authority, who have sustained or will sustain damage to their persons or property by reasons of the alleged failure of Defendant Authority to maintain in decent, safe and sanitary condition the premises or project in which they reside, and who have had or will have their claims for compensation for said damages denied in whole or in part by Defendant Authority, and who have been or will be refused use of the grievance procedure by Defendant Authority on the denial of their damage claims. The case comes before the court now on numerous motions, including defendants' motion to dismiss for failure to state a claim.

The purpose of this suit is to determine whether public housing tenants are entitled to use the normal tenants' grievance procedure to appeal denials of claims for money damages for property losses caused by the alleged negligence of the Housing Authority. This case is governed by the Regulations of the Department of Housing and Urban Development, (hereinafter, "HUD"), and it involves the grievance procedure of the Atlanta Housing Authority (hereinafter, "Authority").

The Authority is a Georgia corporation and a local housing authority created pursuant to Ga.Code Ann. § 99–1101 *et seq.* Authority owns, operates and administers a public housing program in the City of Atlanta, Georgia, and the Kimberly Road Project is part of that program. This public housing program is operated pursuant to 42 U.S.C. § 1437 *et seq.*, and Authority receives financial assistance for its public housing program from HUD.

Named plaintiffs Martin and Printup lived with their families in the Kimberly Road Project until about March 17, 1977. They held their apartments pursuant to the Authority's standard dwelling lease.

On March 17, 1977, a fire occurring in a vacant apartment spread to the named plaintiffs' residences and damaged certain contents. They filed damage claims asking Authority to reimburse them for their losses, asserting that Authority had breached a lease requirement that it maintain the project in safe condition. (The damage claim procedure of the Authority is voluntary, and is not based upon statutory or regulatory mandate. This procedure is not referred to in the dwelling lease and has nothing to do with the lease.) The damage claims were denied on the ground that there was no evidence of negligence on the part of the Authority.

Authority, pursuant to federal law, has promulgated a Grievance Procedure governing certain tenant disputes. The named plaintiffs then sought to pursue a grievance hearing, and counsel for Authority denied their request on the ground that applicable HUD regulations do not require the granting of grievance hearings where monetary damages are being demanded. The grievance request was reiterated and again denied, following which this lawsuit was filed.

Turning to applicable law and regulations, the court notes that HUD, pursuant to 42 U.S.C. § 1437 *et seq.*, has promulgated regulations, codified as Title 24, Code of Federal Regulations, to govern public housing authorities. *See generally Thorpe v.*

*Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

The grievance procedure in low rent public housing projects was created by HUD, and was described in HUD Circular No. RHM 7465.9, dated February 22, 1971. *See also Housing Authority of the City of Omaha, Neb. v. U. S. Housing Authority,* 468 F.2d 1 (8th Cir. 1972). That circular describes the purpose of the program, which was to alleviate certain tenant-management problems. The sorts of problems contemplated were described as follows: "Some of these problem areas are the examination of incomes to determine rents, the re-examination of incomes to determine eligibility for continued occupancy, the inspection of units to determine their condition, the imposition of lease restrictions to protect project property, the procedures used to collect rents or evict families, the procedures to collect costs for repairs for damages to dwelling units or other project areas."

HUD decreed that provision for a grievance procedure should be included in all low rent public housing leases. The description of the grievance procedure appears in 24 C.F.R. § 866.50: "The purpose of this Subpart is to set forth the requirements, standards and criteria for a grievance procedure to be established and implemented by public housing agencies (PHAs) to assure that PHA tenants are afforded an opportunity for a hearing if the tenant disputes within a reasonable time any PHA action or failure to act involving the tenant's lease with the PHA or PHA regulations which adversely affect the individual tenant's rights, duties, welfare or status."

The grievance procedure followed by the Atlanta Housing Authority defines a grievance as "a dispute with respect to any action or failure to act of the Housing Authority of the City of Atlanta, Georgia (hereinafter, "Authority") in accordance with the terms of the Dwelling Lease to which Tenant is a party, or any action or failure to act by the Authority involving the interpretation or application of the Authority's regulations, policies, or procedures if any such action or failure to act adversely affects the Tenant's rights, duties, welfare, or status."

The central issue in this lawsuit is whether the grievance procedure applies to the claim of a tenant for damages for the alleged negligence of Authority in failing to maintain the premises in a safe condition. Essentially what plaintiffs seek to recover is money damages for a tort by the Authority. They argue that such relief is contemplated by the grievance procedure because it involves an act or failure to act by the Authority (the failure to maintain) which adversely affected the tenants' welfare.

■ The court finds, however, that monetary damages are not properly construed to be the subject of the grievance procedure. The HUD circular cited by the plaintiffs illustrates, as noted above, the types of complaints to which the grievance procedure was to apply. Those things generally concern the internal governance of the public housing community and the eligibility of members to reside in it. A claim for damages from the Authority raises entirely different types of considerations. Such a claim does not merely assert "action or failure to act" by the Authority; but it also asserts that the action or failure to act constituted negligence and, further, that such negligence was the proximate cause of plaintiffs' loss. The court notes that issues of this sort are traditionally settled judicially.

Plaintiffs argue that the purpose of the grievance procedure is to reduce tenant-management tensions and litigation costs, and this purpose applies equally well to damage claims against the Authority as to any other admittedly grievable issue. However the court finds that the Authority's grievance procedure by its own terms contemplates limited grievance relief for tenants and further judicial action for them where appropriate. Contrary to plaintiffs' arguments, the court finds no purpose expressed in the official regulations to encourage unsophisticated tenants to bring claims against the Authority.

In construing the purpose of the grievance procedure, the court notes that under that procedure all members of the Tenants Grievance Committee must be residents of the Housing Project, and the hearing is quite informal. HUD cannot reasonably be thought to have intended to create a situation in which public housing tenants, through the mechanism of a grievance procedure staffed by themselves, could award one another money damages for alleged torts by the Authority, to be paid from the public purse, with no judicial safeguards or judicial rules, in a totally lay setting. Moreover, contrary to plaintiffs' suggestion, whether there would be any avenue of appeal or resistance by the Authority following an award of such damages, were it allowed, is quite unclear from the language of the Grievance Procedure.

Plaintiffs cite cases from other jurisdictions showing that a grievance procedure was held applicable to questions of tenants' negligence in damaging premises. *Shavers v. Youngstown Metropolitan Housing Authority*, Civil Action C74–2414 (N.D.Ohio 1974); *Scarpitta v. Glen Cove Housing Authority*, 48 A.D.2d 657, 367 N.Y.S.2d 542 (App.Div.1975). Plaintiffs argue that considerations of the Authority's negligence would raise the same issues. The court finds, however, that the issues of tenant negligence ran to the tenants' qualifications to reside in public housing, and thus were well within the stated purposes of the Grievance Procedure.

Plaintiffs' argument that delays in court would place prospective tort claimants at a disadvantage fails to raise a significant issue. They would be in no worse situation than any other prospective tort claimants who must rely on the courts to adjudicate their claims. Finally, to the extent to which plaintiffs argue that they are entitled to some limited hearing in which they might assert negligence against the Authority, the court notes that they never asked for any sort of hearing other than a grievance hearing on damage claims, to which today's decision holds they are not entitled.

It follows that plaintiffs have stated no claim for relief under applicable federal statutes and regulations. Similarly, the court rules that the complaint states no claim for relief under § 1983.

In sum, defendants' motion to dismiss is GRANTED. The motions of Billie Copeland and Elizabeth Julian to intervene under Rule 24(b)(2), Fed.R.Civ.P., are GRANTED. Plaintiffs' motion for summary judgment, having become moot, is DENIED. Plaintiffs' request for attorney fees is DENIED. Plaintiffs' Motion to Compel Discovery, filed April 22, 1980, is DENIED as untimely under Local Rule 181.21.