TOWNSHIP OF SUSQUEHANNA, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

H AND M, INC., et al., Defendants.

Civ. No. 82–0514.

United States District Court,
M.D. Pennsylvania.

July 14, 1983.

Arnold Levin, Michael D. Fishbein, Howard J. Sedran, Philadelphia, Pa., Lee C. Swartz, Hepford, Swartz, Menaker & Wilt, Harrisburg, Pa., for plaintiffs.

P. Daniel Altland, Harrisburg, Pa., for defendants H and M, Inc., William H. Quigley, Estate of Jack D. Murphy, William S. Hammaker, Inc., East Shore Materials Co. and Baltimore Tar Corp.

## OPINION

MUIR, District Judge.

### I. Introduction.

Plaintiff Township of Susquehanna, individually and on behalf of others similarly situated, filed this action as a proposed class action on April 23, 1982. The complaint named as Defendants H & M, Inc., RSE, Inc., Jack D. Murphy, William H. Quigley, Jr., D. Robert Rimmer, and Walter E. Rimmer. The complaint alleged that the Defendants engaged in a combination and conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq. The Township of Susquehanna alleged that the Defendants violated the antitrust laws by conspiring to fix prices in the "motopaving" industry in Dauphin, Cumberland, Perry, and Lebanon Counties, Pennsylvania. "Motopaving" is the process of building, surfacing, or paving of public roads using a mobile asphalt plant to mix stone and liquid bituminous material at the job site.

On June 3, 1982, Defendants H & M, Inc., Jack D. Murphy, and William H. Quigley, Jr. filed a motion to dismiss the complaint. On June 30, 1982, Defendants RSE, Inc., D. Robert Rimmer, and Walter E. Rimmer, filed a parallel motion to dismiss. The Defendants, in their motions to dismiss, argued principally that the four-year statute of limitations under the Sherman Antitrust Act barred the present action. By order of August 30, 1982, the Court found that the Township of Susquehanna had failed to allege sufficient facts to take this case outside of the four-year statute of limitations. Therefore, the Court granted the Defendants' several motions to dismiss the complaint. The Township of Susquehanna was granted leave to file an amended complaint which alleged with specificity why the four-year statute of limitations under the Sherman Act should not bar this suit.

On September 20, 1982, an amended complaint was filed. The amended complaint was virtually identical to the original complaint with certain additions presented as an attempt by the Township of Susquehanna to allege why the four-year statute of limitations should not bar this suit. In particular, Paragraph 20 of the amended complaint alleged that the Defendants engaged in an ongoing conspiracy continuing at least through the Summer of 1978. Also, in the amended complaint at Paragraphs 24 through 29, the Township of Susquehanna elaborated on its claim that this case is not barred by the applicable statute of limitations because the Defendants engaged in fraudulent concealment.

During the months of October through December of 1982, a spate of motions addressed to the amended complaint were filed by the Defendants. In opinions of November 29, 1982 and January 5, 1983, the undersigned found all of these motions to be lacking in merit and the motions were accordingly denied.

On November 8, 1982, the Township of Susquehanna filed a motion for class certification of a Plaintiff class consisting of "All individuals, proprietorships, governmental entities, corporations and other business entities which have purchased motopaving services from one or more of the Defendants." Also on that date, the Plaintiffs filed a brief in support of their motion. On November 15, 1982, Defendants H & M, Inc., William H. Quigley, Jr., and Jack D. Murphy filed a memorandum of law in opposition to the motion for class certification. The Township of Susquehanna filed a reply memorandum on December 17, 1982. The case was placed on the Court's April 1983

list for trial for disposition of the motion for class certification.

On February 2, 1983, as a result of the death of Defendant Murphy, Martha J. Murphy for the Estate of Jack D. Murphy was substituted as a party.

By order of March 10, 1983, the Township of Susquehanna was granted leave to file a second amended complaint to add certain corporations as Defendants. The second amended complaint was filed on March 14, 1983, and is identical to the amended complaint with the exception that three new parties, William S. Hammaker, Inc., East Shore Materials Co., and Baltimore Tar Corp. are added as Defendants.

On May 19, 1983, the Township of Susquehanna filed a motion voluntarily to dismiss its claims against Defendants RSE, Inc., D. Robert Rimmer and Walter E. Rimmer pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. By order of July 13, 1983, the motion was granted and RSE, Inc., D. Robert Rimmer and Walter E. Rimmer were dismissed as parties to this action.

As a result of the unanticipated and unprecedented length of the trial of *United States v. Gleneagles, et al.,* Civil No. 80–1424 (M.D.Pa.1980), which was ongoing from November 2, 1982, the motion for class certification was not heard until June 17, 1983. At the June 17, 1983 hearing, the Court heard testimony from Miles A. Caughey. Thereafter, certain exhibits were entered into the record and the deposition testimony of Albert F. Kane was read.

On July 1, 1983, upon the uncontested motion of the Township of Susquehanna and by order of this Court, the proposed Plaintiff class was redefined to constitute "All governmental entities, including municipalities and townships, but excluding the Commonwealth of Pennsylvania, within the Four County area, which have purchased motopaving services by bid from one or more of the Defendants or their co-conspirators during the time period of January 1, 1967 to December 31, 1978."

Following are the Court's findings of fact, discussion, and conclusions of law on the motion of the Township of Susquehanna for class certification.

## II. Findings of Fact.

1. On or about March 24, 1982, the United States Government indicted H & M, Inc., RSE, Inc., Jack D. Murphy, William H. Quigley, Jr., D. Robert Rimmer and Walter E. Rimmer with respect to a conspiracy under Section 1 of the Sherman Act (15 U.S.C. § 1), the purpose of which was to allocate customers, rig bids, and fix prices for motopaving projects in the "Four County area" for the period of 1967 to at least September, 1977. (Undisputed, hereafter "U")

2. "Motopaving" means the building, rebuilding, surfacing, resurfacing, paving or repaving of public roads using a mobile asphalt plant to mix stone and liquid bituminous material in a cold mix process at the job site and to place the material on the roadbed. (U)

3. "Four County area" means the four county area within the Commonwealth of Pennsylvania comprising Dauphin, Cumberland, Perry, and Lebanon Counties. (U)

4. On or about July 27, 1982, Defendants H & M, Inc., RSE, Inc., Jack D. Murphy, William H. Quigley, Jr., D. Robert Rimmer and Walter E. Rimmer were found guilty of the charges alleged in the government's indictment. (U)

5. On March 14, 1983, Plaintiffs herein filed a second amended complaint. The initial Complaint was filed on or about April 23, 1982.

6. The second amended complaint names the following persons as defendants: H & M, Inc., RSE, Inc., Jack D. Murphy, William H. Quigley, Jr., D. Robert Rimmer, Walter E. Rimmer, William S. Hammaker, Inc., East Shore Materials Co., and Baltimore Tar Corp.

7. RSE, Inc., D. Robert Rimmer and Walter E. Rimmer are no longer parties to this action.

8. The second amended complaint alleges that the Defendants and others, in violation of the Sherman Act combined and conspired to allocate customers, rig bids, fix

prices on motopaving projects in the Four County area and to assist one another in effectuating such combination and conspiracy.

9. The second amended complaint requested certification of a class comprising the following persons:

All individuals, proprietorships, governmental entities, corporations and other business entities which have purchased motopaving from one or more of the defendants.

10. The Plaintiff, during the class action hearing, indicated that it would restate the definition of the proposed Plaintiff class to constitute only those governmental entities in the Four County area, excluding the Commonwealth of Pennsylvania, which purchased motopaving services from the Defendants during the period from 1967 to 1978. *See* Order of July 1, 1983 so redefining the class.

11. There are approximately 129 municipalities within the Four County area but many may not have purchased motopaving services from the Defendants during the relevant time period.

12. Of the fifty municipalities listed on Kane Exhibit No. 1 (Plaintiff's Exhibit No. 1 at the class action certification hearing), eighteen actually had motopaving work performed in 1977. (U)

13. The documents submitted by Plaintiffs show only 27 municipalities within the Four County area which actually purchased motopaving. (U)

14. Only 25 of the 27 municipalities referred to in the preceding paragraph are included on Kane Exhibit No. 1. (U)

15. The Complaint alleges that as a result of Defendants' illegal conspiracy, class members have had to pay artificially inflated prices for motopaving. (U)

16. The individually named Plaintiff, the Township of Susquehanna, has sufficient financial resources to assure that individual notice of the pendency of this action as a class action will be sent to all class members and that this matter will be aggressively pursued on behalf of the proposed Plaintiff class. (U)

17. There is no question that Plaintiff's counsel are experienced in complex litigation, class actions, and the prosecution of antitrust matters. (U)

18. There is no reason to believe that the named Plaintiff will not be a fully informed, interested and active participant in the prosecution of this litigation on behalf of the class. (U)

19. The individual named Plaintiff, the Township of Susquehanna, and Plaintiffs' attorneys, Levin and Fishbein and Hepford, Swartz, Menaker, Wilt & Morgan, have no interest which conflicts with the interest of any member of the proposed class in the prosecution of this action. (U)

20. The Township of Susquehanna is a purchaser of motopaving. (U)

21. The names and addresses of all class members can be ascertained through minimal effort. (U)

22. Individual notice of the pendency of this action as a class action can be supplied by sending such notice via first class mail postage pre-paid to all class members located in the Four County area with a minimum of effort. (U)

23. At the trial of this action, Plaintiff intends to adduce evidence that Defendants combined and conspired to fix, allocate, and rig bids with respect to motopaving in the Four County area. (U)

24. At the trial of this action, Plaintiff intends to adduce evidence that Defendants' conspiracy commonly affected the price of motopaving charged to class members in the Four County area. (U)

25. At the trial of this action, Plaintiff intends to adduce evidence that Defendants actively concealed the aforementioned conspiracy. (U)

26. No other putative class members have filed suit against these Defendants alleging claims similar to those alleged herein. (U)

27. On April 23, 1982, Plaintiffs filed a Complaint averring, inter alia, that Defend-

ants' illegal conduct continued to at least September of 1977. (U)

28. In the amended complaints filed in November, 1982 and on March 14, 1983, Plaintiffs alleged that "During the summer of 1978 and beyond, defendants continued to allocate customers amongst themselves in accordance with the terms of a written list which was prepared by Defendants in 1977." (U)

29. D.F. Snyder & Sons was the successful bidder in Watts Township in 1978. The 1977 list allocated Watts Township to RSE, Inc. t/a Harrisburg Asphalt. (U)

30. H & M, Inc. was the successful bidder in Toboyne Township in 1978. The 1977 list allocated Toboyne Township to D.F. Snyder & Sons. (U)

31. H & M, Inc. was the successful bidder in South Middleton Township in 1978. The 1977 list allocated South Middleton Township to RSE, Inc. t/a Harrisburg Asphalt. (U)

32. H & M, Inc. was the successful bidder in North Middleton Township in 1978. The 1977 list allocated North Middleton Township to RSE, Inc. t/a Harrisburg Asphalt. (U)

### III. Discussion.

The Township of Susquehanna seeks class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure. In order for this Court to certify a class pursuant to Rule 23(b)(3), the Township of Susquehanna must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, . . . (4) the representative parties will fairly and adequately protect the interests of the class," F.R.Civ.P. 23(a), and (5) " . . . the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy," F.R.Civ.P. 23(b)(3). *E.g. DeMarco v. Edens,*

390 F.2d 836, 845 (2d Cir.1968); *City of Philadelphia v. Emhart Corporation,* 50 F.R.D. 232 (E.D.Pa.1970); *Weisman v. M.C.A. Inc.,* 45 F.R.D. 258 (D.Del.1968). *See* 3B *Moore's Federal Practice* ¶ 23.02–2. The Court will deal with each of the requirements of Rule 23 *seriatim.*

### A. Numerosity.

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." The Township of Susquehanna suggests that there are between 27 and 129 members of the proposed Plaintiff class. The parties have stipulated to the fact that the evidence adduced at the class action certification hearing demonstrates with certainty that there were only 27 municipalities within the Four County area which actually purchased motopaving services.

During the class action certification hearing, the Township of Susquehanna introduced into evidence portions of a United States Department of Commerce Bureau of the Census document. That document demonstrates that there are 129 municipalities within the Four County area. While the Township of Susquehanna has proved the existence of only 27 class members, it would have this Court infer from the fact that there are 129 municipalities in the Four County area that substantially more than 27 municipalities purchased motopaving services. The undersigned is not convinced that such an inference is warranted. This action has been pending since April 23, 1982. The record demonstrates that discovery has been ongoing since that time. In the view of the undersigned, during the fourteen months since this lawsuit was filed, through discovery, the Township of Susquehanna could readily have ascertained whether the 129 municipalities in the Four County area did or did not purchase motopaving services. The fact that the Township of Susquehanna can, at this point, prove only that 27 municipalities purchased such motopaving services precludes this Court from inferring that the remaining

102 municipalities also purchased motopaving services. *See Martin v. Housing Authority of Atlanta,* 86 F.R.D. 320 (N.D.Ga. 1980); *Reichlin v. Wolfson,* 47 F.R.D. 537 (S.D.N.Y.1969). Indeed, the more reasonable inference is that few, if any, of the remaining 102 municipalities actually purchased motopaving services.

■ The undersigned recognizes that the exact number of members of a plaintiff class need not be ascertained for the numerosity requirement to be satisfied. *E.g. Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1968); *Illinois v. Harper & Rowe Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969). *See Cypress v. Newport News General and Non-Sectarian Hospital Association,* 375 F.2d 648, 653 (4th Cir.1967). Nonetheless, mere speculation and unsupported conclusions as to the number of members of a class is inadequate. *See Valentino v. Howlett,* 528 F.2d 975 (7th Cir.1976); *DeMarco v. Edens,* 390 F.2d 836 (2d Cir.1968); *Harrison v. Simon,* 91 F.R.D. 423 (E.D.Pa.1981); *Barlow v. Marion County Hospital District,* 88 F.R.D. 619 (M.D.Fla. 1980). For these reasons, the Court must conclude that there are approximately 27 members of the proposed Plaintiff class.

The question of what constitutes a sufficient number so that joinder of all members is "impracticable" depends on the particular facts of a case. *E.g. Garcia v. Gloor,* 609 F.2d 156 (5th Cir.1980); *Kelley v. Norfolk and Western Railway,* 584 F.2d 34 (4th Cir. 1978); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Fox v. Prudent Resources Trust,* 69 F.R.D. 74 (E.D.Pa.1975). As Professor Moore aptly remarked:

> [N]o hard and fast number rule can or should be stated since "numerosity" is tied to "impracticability" of joinder under the specific circumstances. Nevertheless, some general tendencies can be observed. While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are excep-

tions, numbers in excess of forty, particularly those exceeding 100 or 1,000 have sustained the requirement.

3B *Moore's Federal Practice,* ¶ 23.05[1] (citations omitted). As might be expected given this individualized consideration, the case law is replete with inconsistencies. *Compare J.M. Woodhull, Inc. v. Addressograph-Multigraph Corp.,* 62 F.R.D. 58 (S.D. Ohio, 1974) (27 insufficient); *Moreland v. Rucker Pharmacal Company,* 63 F.R.D. 611 (W.D.La.1974) (26 insufficient); *Corporation of Haverford College v. Reeher,* 329 F.Supp. 1196 (E.D.Pa.1971) (26 insufficient); *Moscarelli v. Stamm,* 288 F.Supp. 453 (E.D. N.Y.1968) (25 insufficient) *with Sabala v. Western Gillette, Inc.,* 362 F.Supp. 1142 (S.D.Tex.1973) *aff'd in part, rev'd in part,* 516 F.2d 1251 (5th Cir.1975) (27 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa. 1968) (25 sufficient); *Walls v. Bank of Greenwood,* 20 F.R.Serv.2d 112 (N.D.Miss. 1975) (23 sufficient).

■ The Court must consider whether or not joinder of all parties desiring to pursue claims would be impracticable. In the view of the undersigned, there is no substantial impediment to any municipality which purchased motopaving services either joining in this lawsuit or filing its own suit. The availability of both treble damages and attorney's fees under the antitrust laws would surely rebut any suggestion that a municipality cannot afford to bring its own suit.

Considering both the small number of proposed class members and the lack of impracticability of joinder, the undersigned is of the view that the numerosity requirement has not been satisfied.

**B. Common Questions of Law and Fact.**

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. This requirement has consistently been satisfied in class action antitrust conspiracy cases. *E.g. In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244 (S.D.Tex.1978); *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727 (N.D.Ill.

1977); *In re Ampicillin Antitrust Litigation*, 55 F.R.D. 269 (D.D.C.1972). Were a class certified, the Plaintiff class would be required to establish the existence of a conspiracy to fix the prices of motopaving services and to rig bidding for those services. This question is clearly common to all proposed class members. *E.g. In re Fine Paper Antitrust Litigation*, 82 F.R.D. 143 (E.D.Pa. 1979). *See also Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968).

C. Typicality of Claims and Defenses of Class and Class Representative.

■ Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." There is authority for the proposition that Rule 23(a)(3) is mere surplusage, *e.g. Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir.1977), as the requirements of Rule 23(a)(3) have been equated both with the requirements of Rule 23(a)(2) that common questions of law or fact exist, *e.g. Rakes v. Coleman*, 318 F.Supp. 181 (E.D.Va. 1970), and the requirements of Rule 23(a)(4) that the representative party adequately represent the class, *e.g. Robertson v. National Basketball Association*, 389 F.Supp. 867 (S.D.N.Y.1975). In any event, there is substantial doubt as to the exact meaning of the "typicality" requirement. *E.g. Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228, 233 (M.D.Pa.1978) (Nealon, C.J.).

Without regard to a precise definition of "typicality" of claims, it is clear in this case that the claims of both the Township of Susquehanna and the proposed Plaintiff class are parallel. While many factual differences exist between the claims of the Township of Susquehanna and the members of the proposed class, *see* discussion of Rule 23(b)(3), *infra* at III.E., *cf. Lamb v. United Security Life Co.*, 59 F.R.D. 25 (S.D.Iowa 1972), the fact that each proposed class member has allegedly been harmed by conduct of the Defendants and the fact that the harm to each proposed class member parallels the harm to other class members suffice to satisfy the "typicality" requirement. *E.g. Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir.1968) (*Eisen I*).

D. Adequacy of Representation.

■ The final requirement of Rule 23(a) is that "the representative parties ... fairly and adequately protect the interests of the class." F.R.Civ.P. 23(a)(4). Rule 23(a)(4) contains two components: "(a) that Plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The parties have stipulated to facts sufficient to satisfy this requirement. In particular, the parties have stipulated that the Township of Susquehanna has sufficient financial resources to assure that the members of the class would be kept adequately informed of the pendency of the action; that this matter would be aggressively pursued on behalf of the Plaintiff class; that Plaintiff's counsel are experienced in complex litigation, class actions, and the prosecution of antitrust matters; that the Township of Susquehanna will be fully informed, interested and an active participant in the prosecution of this litigation; that the Township of Susquehanna and counsel representing the Township of Susquehanna have no interests which conflict with the interests of any member of the proposed class; and that the Township of Susquehanna is a member of the proposed class. In the view of the undersigned, the "adequacy of representation" requirement is satisfied. *E.g. Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Sommers v. Abraham Lincoln Federal Savings and Loan Association*, 66 F.R.D. 581 (E.D.Pa. 1975).

E. Requirements of Rule 23(b)(3).

■ In addition to satisfying the requirements of Rule 23(a), the proposed

Plaintiff class must satisfy one of the subsections of Rule 23(b). In this case, the Plaintiffs suggest that the proposed class satisfies Rule 23(b)(3). For a proposed class to satisfy the requirements of Rule 23(b)(3), the Court must find that:

> ... the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

F.R.Civ.P. 23(b)(3). In determining the predominance of common issues, this Court may look to the existence of a "common nucleus of operative facts" relevant to the dispute. *E.g. Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544 (E.D. Pa.1976). While the precise perimeters of the "predominance" standard are unclear, *Harrigan v. United States,* 63 F.R.D. 402 (E.D.Pa.1974); *Minnesota v. United States Steel Corp.,* 44 F.R.D. 559 (D.Minn.1968), courts generally look to whether or not common questions represent a significant aspect of the case that can be resolved for all members of the class in a single adjudication and compare the common questions to the individualized disputes. Courts have often not attempted to measure the time that will be spent litigating each issue in the case to determine whether the common questions predominate in the consumption of time. *E.g. Minnesota v. United States Steel Corp.,* 44 F.R.D. at 569. Nonetheless, some courts recognize that it is proper to compare the time that would be spent on the common and individual issues. *See B & B Investment Club v. Kleinert's Inc.,* 62 F.R.D. 140 (E.D.Pa.1974) (Green, J.). In a case such as this, the undersigned believes that inquiry into the probable time spent in the *liability* phase of the case on common issues as compared to the time spent on individualized issues is a relevant concern in determining whether common issues "predominate."

In this case, the complaint alleges that the Defendants agreed and conspired among themselves and with others to allocate customers, rig bids, and fix prices on motopaving services in the Four County area. Of course, proof of the existence of a conspiracy is an issue central to the litigation. *E.g. In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727 (N.D.Ill.1977); *In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143 (E.D.Pa.1979); *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 (E.D.Pa.1976). Likely, evidence presented in proving the existence of the conspiracy in this case will be the same for each member of the proposed class and resolution of that issue on a class-wide basis would be advantageous. *E.g. Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791 (10th Cir.1970).

■ The fact that the existence of a conspiracy in restraint of trade is central to this litigation does not dictate the conclusion that the conspiracy issue predominates. Indeed, in a case such as this where the private antitrust litigation is brought following a criminal action by the United States against the same defendants, the issue of the *existence* of the conspiracy will likely not be an area of great dispute. The parties have stipulated that in the criminal antitrust action filed by the United States, the Defendants were all found guilty. Under the antitrust laws, 15 U.S.C. § 16(a), any judgment obtained by the United States in a public criminal litigation shall be *prima facie* evidence of the violation of the antitrust laws in a subsequent treble damages civil action. *E.g. Minnesota Mining and Mfg. Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); *International Shoe Machine Corp. v. United Shoe Machine Corp.,* 315 F.2d 449 (1st Cir.), *cert. denied,* 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963). As such, while the issue of the existence of the conspiracy is central to the case, proof thereof will not necessarily be either substantial or time-consuming. *Cf. Philadelphia Electric Co. v. Anaconda American Brass,* 43 F.R.D. 452 (E.D.Pa.1968). *See also Minnesota v. United States Steel Corp.,* 44 F.R.D. 559 (D.Minn.1968).

As is apparent from the procedural history in this case, the most hotly contested issue thus far is not the existence of the conspiracy but whether or not the statute of limitations bars the claims of the Township of Susquehanna and the proposed Plaintiff class. The two theories upon which the Township of Susquehanna proceeds in attempting to overcome the statute of limitations problem are that the conspiracy continued during the summer of 1978 and beyond at which time the Defendants continued to allocate customers among themselves in accordance with the terms of a written list which was prepared in 1977 (*see* Second Amended Complaint ¶ 23) and that the statute of limitations was tolled as a result of the fraudulent concealment by the Defendants of the conspiracy (*see* Second Amended Complaint ¶¶ 27–32).

 The undersigned recognizes the general rule that inquiry into the merits of a claim may not be made to determine the propriety of class certification. *Kahan v. Rosenstiel*, 424 F.2d 161, 168 (3d Cir.1970), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1971). *See Lamphere v. Brown University*, 553 F.2d 714 (1st Cir. 1977); *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir.1975); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir.1973), *aff'd* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen II*); *B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140 (E.D. Pa.1974). Nonetheless, in order at least adequately to determine whether or not common issues predominate under Rule 23(b)(3), there must be some inquiry into the merits of Plaintiffs' apparently conclusory allegations attempting to overcome the statute of limitations problem.

With respect to the allegations of a continuing conspiracy at least through the summer of 1978, the statute of limitations would not begin to run until the last overt act of the conspiracy had taken place. *E.g. Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). In its opinion of January 5, 1983, the Court noted the conclusory allegation in the complaint that the conspiracy continued during the summer of 1978. The Court further noted that there was no appropriate motion testing the sufficiency of the allegation of an overt act during the summer of 1978 or later. Thus, the Court concluded that the continuing conspiracy theory was well pleaded. The Court is again required to address the "continuing conspiracy" theory in determining whether common questions predominate. The question of whether there was an overt act during the summer of 1978 or beyond clearly is common to all members of the class. If it is established that there was such an overt act of the conspiracy, Plaintiffs will have succeeded in overcoming the bar of the statute of limitations *without* any individualized showings.

 At the class action hearing, the Township of Susquehanna failed to set forth any evidence to suggest the veracity of its allegation that during the summer of 1978 and beyond the Defendants continued to allocate customers among themselves in accordance with the terms of the written list which was prepared by the Defendants in 1977. Indeed, the only evidence in this regard is to the contrary. Defendants' Exhibit 2E demonstrates that the bid for motopaving in Watts Township for 1978 was awarded to D.F. Snyder & Sons. The 1977 list, Kane Exhibit 1, indicated that Watts Township was to be assigned to Harrisburg Asphalt (RSE, Inc.), and not Snyder. Defendants Exhibit 3A demonstrated that in 1978, the bid for Toboyne Township was awarded to H & M, Inc. Kane Exhibit 1, the 1977 list, indicated that Snyder and not H & M was to be awarded the bid for Toboyne Township. *See also* Findings of Fact 29 through 33. While the evidence adduced at the class action hearing does not convince the Court that there was no "continuing conspiracy" during 1978 and beyond, the failure of the Township of Susquehanna to put forth evidence of such a continuing conspiracy leads the Court to conclude that the statute of limitations problem likely cannot be solved simply on the basis of "continuing conspiracy" theory.

Under the second theory by which Plaintiffs attempt to overcome the statute of limitations, Plaintiffs plead fraudulent concealment on the part of the Defendants. Under the "fraudulent concealment" exception to the statute of limitations, Plaintiffs must prove (1) wrongful concealment by the Defendants of their actions, (2) failure of the Plaintiffs to discover within the limitations period the operative facts that were the bases of their cause of action and (3) Plaintiffs' due diligence until discovery of the facts. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975); *Weinberger v. Retail Credit Co.,* 498 F.2d 552 (4th Cir.1974). Plaintiffs contend in addition that there was *active* concealment by the Defendants of their unlawful conduct. *See* Second Amended Complaint ¶¶ 27–32. *E.g. Robertson v. Seidman & Seidman,* 609 F.2d 583, 593 (2d Cir.1979); *Sperry v. Barggren,* 523 F.2d 708, 711 (7th Cir.1975). There is authority for the proposition that where there is active concealment, Plaintiffs' due diligence is irrelevant. *Ohio v. Petersen, Lowry, Rall, Barber & Ross,* 472 F.Supp. 402, 406–07 (D.Colo.1979).

During the class action hearing, Plaintiffs introduced no evidence that the Defendants engaged in *active* concealment. The only proffered "evidence" of such active concealment might have been found in the Kane deposition. Kane stated that none of the Defendants ever notified the proposed Plaintiff class members of the existence of the conspiracy. Surely, failure to notify the townships and municipalities of the existence of the conspiracy cannot constitute active concealment. The Plaintiff intends to introduce further evidence of active concealment during the trial on the merits in this action. However, the nature of such evidence has not been disclosed to this Court and its existence is disputed by the Defendants. The Court does not conclude at this time that there was no active concealment. Nonetheless, based on the evidence adduced at the class action certification hearing, it is likely that to establish the fraudulent concealment exception to the statute of limitations, Plaintiffs will have to prove all three elements of their claim, namely (1) wrongful concealment by the Defendants, (2) failure of the Plaintiffs to discover the operative facts within the limitations period, and (3) Plaintiffs' due diligence until discovery of the facts. Clearly, for Plaintiffs to prove the second and third aspects of their fraudulent concealment claim, individualized evidence by each member of the Plaintiff class will be required relating to the due diligence of the townships and municipalities to discover the facts and the failure of the townships and municipalities to discover the facts within the limitations period. *E.g. In re Anthracite Coal Antitrust Litigation,* 78 F.R.D. 709, 719 (M.D.Pa.1978) (Muir, J.); *Holmes v. Penn Security Bank & Trust Co.,* 1982–1 Trade Cases ¶ 64,553 (M.D.Pa.1981) (Muir, J.). Likely, special verdict questions will have to be sent to the jury regarding each of these questions for each of the proposed class members *before* the jury could even reach the other liability issues.

In sum, it is exceedingly likely that the central *litigated* issue in this case will be whether or not members of the proposed Plaintiff class have live claims not barred by the statute of limitations. Given the likelihood that individualized evidence will be required for each member of the proposed Plaintiff class, it seems to the undersigned that individualized issues will predominate over common issues of conspiracy and the Defendants' wrongful conduct. This is especially the case since the finding of guilt in the criminal antitrust case is *prima facie* proof of the existence of a conspiracy in this case. For these reasons, the undersigned concludes that the common issues of law or fact do not predominate over questions affecting only individual members of the plaintiff class.

Finally, the Court must consider under Rule 23(b)(3) whether or not the class suit is superior to other available means of settling this controversy. Given the small number of possible class members and at least the possibility that some members of the proposed Plaintiff class do not have claims which survive the statute of limita-

tions defense, the undersigned concludes that the class suit is not superior to other available means of settling this controversy.

## IV. Conclusions of Law.

1. The proposed Plaintiff class does not satisfy the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

2. There are questions of law or fact common to the proposed class and the requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure have been satisfied.

3. The claims or defenses of the proposed representative parties are typical of the claims and defenses of members of the proposed Plaintiff class and the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure have been satisfied.

4. The representative parties and their counsel would fairly and adequately protect the interests of this class and the requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure have been satisfied.

5. Questions of law or fact common to members of the Plaintiff class do not predominate over questions affecting individual members of that proposed class.

6. The class action device is not superior to other methods available for the fair and efficient adjudication of this controversy.

7. The requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure have not been satisfied.

8. The proposed Plaintiff class should not be certified.

An appropriate order will issue.