CHRISTIANA MORTGAGE CORPORATION, a Delaware corporation; Consolidated Mortgage Corporation, a Delaware corporation; Sunvest Mortgage Corporation, a Delaware corporation; Amato & Stella Mortgage Corporation, a Delaware corporation; and Mortgage Assoc. Inc., a Delaware corporation, Plaintiffs,

v.

The DELAWARE MORTGAGE BANKERS ASSOCIATION, an unincorporated association; David C. Sorber, Individually; and Delaware Trust Company, a Delaware corporation, Defendants.

Civ. A. No. 89–310–JRR.

United States District Court, D. Delaware.

April 24, 1991.

Victor F. Battaglia, Francis S. Babiarz, and Victor F. Battaglia, Jr., of Biggs & Battaglia, Wilmington, Del., for plaintiffs.

Eduard F. von Wettberg, III, and Barbara MacDonald, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Delaware Mortg. Bankers Ass'n and David C. Sorber.

Somers S. Price, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant Delaware Trust Co.

## OPINION

ROTH, District Judge.

The plaintiffs in this action are six mortgage brokers: Christiana Mortgage Corporation, Consolidated Mortgage Corporation, Sunvest Mortgage Corporation, Landmark Mortgage, Inc., Amato & Stella Mortgage Corporation, and Mortgage Associates, Inc. They filed suit against the Delaware Mortgage Bankers Association ("DMBA"), David C. Sorber ("Sorber"), and the Delaware Trust Company ("Delaware Trust"), claiming that an article, written by defendant Sorber for the DMBA was libelous and intended to cause a boycott of mortgage brokers by DMBA members. In the article, Sorber stated his support for the adoption of legislation to regulate the activities of mortgage brokers. The complaint asserts various antitrust violations under Sections 1 and 2 of the Sherman Act, as well as two counts for libel, and four further counts for injurious falsehood, tortious interference with business relations, deceptive trade practices, and conspiracy.

By Order of April 9, 1990, this Court granted Defendants' Motion for Summary Judgment as to plaintiffs' claims for libel, deceptive trade practices, injurious falsehood, and deceptive trade practices on the ground that these claims were barred by the *Noerr–Pennington* doctrine. *See*

*United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). However, we denied the summary judgment motion as to plaintiffs' claims for antitrust violations, tortious interference with business relations, and conspiracy because of evidence regarding a separate circulation to realtors of a truncated version of the Sorber article, accompanied by an instruction to agents within certain realtors' offices that they should not recommend the listed mortgage brokers to clients. (Docket Item 43 at 50–54).

On their remaining claims, the six individual plaintiffs now seek to represent a class including twenty-two additional mortgage brokers. Plaintiffs' Motion for Class Certification is presently before this Court. For the reasons stated below, that motion will be denied.

### FACTS

The named plaintiffs are all mortgage brokers who operate in Delaware. Defendant Sorber is an employee of Defendant Delaware Trust, whose business includes mortgage banking. Sorber is also a past president of Defendant DMBA, and has acted on occasion as their agent. DMBA is an unincorporated association whose membership includes lending institutions, title insurers, appraisers, and others in the housing financing industry in Delaware. Delaware Trust is a member of DMBA. Plaintiffs allege that their businesses operate in direct competition for mortgage loan originations with DMBA's lending institution members.

The present dispute essentially arises from an article published on April 14, 1989 by Sorber regarding mortgage brokers and proposed legislation to regulate them in the State of Delaware. The Sorber article addressed "the problems and the dangers that unlicensed, unregulated mortgage brokers pose" to the industry by "operating under a loophole in the Delaware mortgage banker licensing law." (Sorber article, D.I. 39A, Ex. 6). Attached to the article was a document entitled "Mortgage Bankers and Mortgage Brokers ... Operating Without a State License or Exemption Letter," which listed the names and addresses of, and comments on, twenty-eight brokers including the six plaintiffs in this action. (List attached to Delaware Trust's Answering Brief at A–18).

As defendants admit, the Sorber article was distributed to the members of DMBA. Plaintiffs also allege that defendants distributed the article, or a truncated version consisting of only the list of brokers "Operating Without a State License or Exemption Letter," to various other persons including real estate agents operating in New Castle County, Delaware. Their complaint further states that referrals of consumers from real estate agents is one of three major avenues by which mortgage brokers obtain business. Plaintiffs claim that as a result of the distribution of the Sorber article and its truncated version, real estate agents ceased referring consumers to plaintiffs and further disparaged plaintiffs' services. Consequently, plaintiffs suffered a loss of business and harm to their reputations.

Following this Court's ruling on defendants' summary judgment motion, five counts of plaintiffs' complaint remain. Count I alleges that defendants combined and conspired to boycott plaintiffs' businesses in violation of Section I of the Sherman Act, 15 U.S.C. § 1 (1988). In Count II they claim that defendants combined and conspired to create an unreasonable restraint of trade, also in violation of Section 1. Count III charges that defendants combined and conspired to attempt to monopolize the market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1988). Each of these three antitrust counts is raised under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1988). Count VII asserts a claim of tortious interference with existing and prospective business relations. Lastly, Count IX raises a claim of conspiracy.

Plaintiffs' present motion seeks to certify a class composed of the twenty-eight mortgage brokers whose names and addresses appear in the list attached to the

Sorber article. In addition to the six named plaintiffs, sixteen of the remaining twenty-two brokers on the list are also located in Delaware. The final six listed brokers are all located either in New Jersey or Pennsylvania. Furthermore, as Delaware Trust states in its answering brief and plaintiffs have not countered in their reply brief, three of the brokers in New Jersey are located within forty miles of Wilmington, Delaware; the two Pennsylvania brokers are located within twenty miles of Wilmington; and the final New Jersey broker is approximately 100 miles from Wilmington.

## DISCUSSION

### I. THE STANDARD FOR CLASS CERTIFICATION UNDER FED.R.CIV.P. 23

■ The standard for when an action may be certified as a class action is set forth in Fed.R.Civ.P. 23. Plaintiffs must first demonstrate that each of the four prerequisites of Rule 23(a) is satisfied, and then show that the action also meets the requirements of one of the three subsections of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). The four threshold requirements of Rule 23(a) are as follows:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These prerequisites are more succinctly referred to as the requirements for numerosity, commonality, typicality, and representativeness.

As to Rule 23(b), plaintiffs do not rely on subsection (b)(1), but only assert that a class may be certified under either 23(b)(2) or 23(b)(3). To certify a class under Rule 23(b)(2), defendants must have "acted or refused to act on grounds generally applicable to the class," and the primary relief sought must be injunctive relief. *See*

*Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Alternatively, a class may be certified under Rule 23(b)(3) if plaintiffs can demonstrate first, that questions of law or fact common to the members of the proposed class predominate over individual issues, and second, that a class action is superior to other possible methods of adjudication. *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

Either the moving party's failure to meet even one of the four Rule 23(a) prerequisites, or its inability to qualify under one of the three subparts of Rule 23(b), would alone be sufficient reason to deny class certification. We note, however, that the Third Circuit has advised us to set forth in full our findings as to all elements under Rule 23. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied sub nom. Weinstein v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

### II. THE RULE 23(a) PREREQUISITES

#### A. *The Numerosity Requirement of Rule 23(a)(1)*

■ Under Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable." There is no set numerical cutoff under the numerosity requirement. Rather, the determination of whether the size of the class makes joinder impracticable must be evaluated under the particular circumstances of each case. *Township of Susquehanna v. H and M, Inc.,* 98 F.R.D. 658, 664 (M.D.Pa.1983). Consequently, courts have found this requirement met with as few as eighteen, *see Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir.1967), or twenty-five members, *see Philadelphia Elec. Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa.1968), and have found insufficient as many as 141 members, *see In re Anthracite Coal Antitrust Litigation,* 78

F.R.D. 709, 715 (M.D.Pa.1978). In order to establish impracticability, it is sufficient to demonstrate that it is extremely inconvenient to join all the members as parties. *Anthracite Coal,* 78 F.R.D. at 715. Nonetheless, plaintiffs must establish some reason why joinder would be impracticable.

In the present case, plaintiffs' proposed class contains a total of twenty-eight members.[1] Plaintiffs argue that despite this small size of the proposed class, several factors counsel in favor of class certification. In particular, they contend, citing *Arkansas Educ. Ass'n v. Board of Educ.,* 446 F.2d 763, 765 (8th Cir.1971), that "a natural fear or reluctance" to bring separate actions may justify including the intimidated proposed members in a class action. Plaintiffs assert that this consideration is applicable because defendants have threatened that they will continue to regard any mortgage broker who brings a suit against defendants as an adversary. The *Arkansas Educ. Ass'n* case, however, involved claims of race discrimination suffered by twenty black teachers in Arkansas during the period from 1966 to 1969. We do not believe that the type of apprehension allegedly experienced by the members of plaintiffs' proposed class is sufficiently similar to the "natural reluctance" of the black teachers in Arkansas to assert their civil rights to warrant application of the standards set forth in *Arkansas Educ. Ass'n* to this case.

Plaintiffs also maintain that various factors relating to judicial economy justify certification of the proposed class. *See, e.g., Philadelphia Elec. Co.,* 43 F.R.D. at 463. Yet, it is not clear that in the present action concerns for judicial economy weigh in favor of class treatment. Courts have noted, for example, that joinder and intervention may be far simpler procedures because it is likely that not all the proposed class members will seek to join the suit. *See Al Barnett & Son, Inc. v. Outboard*

*Marine Corp.,* 64 F.R.D. 43, 49 (D.Del. 1974) (citing other cases reaching same conclusion). Furthermore, since as noted above, all twenty-eight members of the proposed class are located within a small geographic area, any other interested mortgage brokers could seek joinder into the present suit rather than commencing a new action in a different district, and could thereby minimize the duplication of discovery and pre-trial proceedings.

Moreover, since the twenty-eight mortgage brokers are all located either in the state of Delaware or within 100 miles of Wilmington, it would not be difficult for the present plaintiffs to coordinate prosecution of this action with any of the other twenty-two brokers who might seek to join in the litigation. *See Anthracite Coal,* 78 F.R.D. at 715 ("The [141] potential class members ... are all in one state. Informal coordination of their efforts would not be difficult."). In addition, we cannot accept plaintiffs' suggestion that class treatment is necessary because the individual claims of several potential class members are small, and they might therefore be reluctant to bring their own suits. This argument carries little weight in antitrust actions in which both treble damages and attorneys' fees are available. *See, e.g., Township of Susquehanna,* 98 F.R.D. at 664 ("The availability of both treble damages and attorney's fees under the antitrust laws would surely rebut any suggestion that a [potential class member] cannot afford to bring its own suit.").

Thus, plaintiffs have not demonstrated any reason to conclude that joinder would be impracticable. Rather, the small size of the proposed class, the geographic concentration of the twenty-eight mortgage brokers, and the availability of treble damages and attorneys' fees, all indicate that joinder would be quite feasible. As a result, we conclude that plaintiffs have failed to meet

---

1. Despite the statement of Defendants DMBA and Sorber at footnote 1 of their answering brief that plaintiffs have miscounted the number of brokers and actually twenty-nine are listed, having reviewed the list attached to Defendant Delaware Trust's brief at A–18, we, like plaintiffs, have counted only twenty-eight brokers. We note, however, that the difference between twenty-eight and twenty-nine members would not affect either our analysis or our conclusion.

the numerosity requirement of Rule 23(a)(1).

### B. *The Commonality Requirement of Rule 23(a)(2)*

■ To meet the commonality requirement, the party seeking class certification must show that there exist questions of law or fact that are common to all class members. Contrary to the argument of Defendant Delaware Trust, and unlike Rule 23(b)(3) which is discussed below, Rule 23(a)(2) does not require that common questions predominate over individual ones, but only that the case presents some common questions. *See, e.g., Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir.1977) (requirement met because "there are at least some issues of both fact and law which are common to the class"), *cert. denied* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 465 (E.D.Pa.1979) ("it is not necessary at this point of the determination that such common questions be shown to 'predominate'"). The commonality requirement is usually not difficult to meet in antitrust cases. *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 335 (E.D.Pa. 1976).

As outlined above, the counts of plaintiffs' complaint that have survived summary judgment assert three claims for antitrust violations as well as tortious interference with business relations and conspiracy. Consequently, the common questions include the following: whether defendants formed a conspiracy; whether defendants combined and conspired to form a boycott of the twenty-eight mortgage brokers on the Sorber list; whether defendants combined and conspired to attempt to monopolize the mortgage loan origination market; whether defendants combined and conspired to restrain trade; and whether defendants intended to interfere with plaintiffs' business relationships. These common questions are more than sufficient to meet the requirement of Rule 23(a)(2).

### C. *The Typicality Requirement of Rule 23(a)(3)*

■ The typicality element of Rule 23(a)(3) requires us to assess whether the named plaintiffs differ markedly from the other potential class members either in their individual circumstances or in the legal theory upon which their claims are based. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.), *cert. denied sub nom. Weinstein v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). This class action prerequisite is designed to ensure that the named representatives do not exhibit unique circumstances which will receive undue emphasis in the litigation and thereby leave other claims unrepresented. *Weiss v. York Hosp.*, 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). The typicality requirement is generally met if the named plaintiffs' claims arise from the same events and are based on the same legal theories as those of the absent class members. *Cumberland Farms, Inc. v. Browning–Ferris Indus., Inc.*, 120 F.R.D. 642, 646 (E.D.Pa.1988).

In this action the claims of all potential class members arise out of the same events, and the legal theories upon which all twenty-eight mortgage brokers would rely are identical. More specifically, the allegations of antitrust, tort, and conspiracy all stem from the distribution of the truncated version of the Sorber article, which listed all twenty-eight potential class members together.[2] Moreover, there is no

---

**2.** In view of the fact that the article was written as part of a lobbying campaign in support of proposed legislative regulation of mortgage brokers and would therefore be protected by the *Noerr–Pennington* doctrine, distribution of the complete article would be neither tortious nor a violation of the antitrust laws. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 143–44, 81 S.Ct. 523, 532–33, 5 L.Ed.2d 464 (1961). As we stated at oral argument on defendants' motion for summary judgment, we denied summary judgment as to Counts I, II, III, VII, and IX, because we had determined that there was a sufficient showing by plaintiffs to support a theory of a separate effort to boycott mortgage brokers. Plaintiffs' proof indicated that defendants had distributed a truncated version of the Sorber article, and

indication in the record that the present plaintiffs exhibit any unique circumstances to distinguish them from the other class members, and "typical" does not mean "identical." *Eisenberg*, 766 F.2d at 786. Therefore, we find that plaintiffs are typical of the proposed class and have met the test of Rule 23(a)(3).

### D. *The Representativeness Requirement of Rule 23(a)(4)*

Under Rule 23(a)(4) we must determine the adequacy of representation by the named plaintiffs. This element consists of two factors: (1) the plaintiffs' attorneys must be sufficiently qualified and competent to handle the litigation, and (2) the interests of the named representatives must not be antagonistic to those of the other class members. *Weiss*, 745 F.2d at 811 (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)). Defendants do not challenge the qualifications of plaintiffs' attorneys. They do, however, contend that plaintiffs' interests conflict with those of the proposed class members on an essential element of this action.

In order to establish liability on an antitrust claim for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1988), plaintiffs must prove not only that defendants' conduct was taken in violation of antitrust laws such as Sections 1 and 2 of the Sherman Act, but also that this violation caused them to suffer actual injury. *See Weiss*, 745 F.2d at 805. This "fact of damage" element is part of the proof of liability and must be distinguished from proving the amount of damages after liability has been established. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454–56 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Defendant Delaware Trust argues that plaintiffs' interests regarding the fact of damage element are antagonistic to those of the other

potential class members, and that consequently, plaintiffs would not adequately represent the interests of absent class members.

More specifically, Delaware Trust points out that all twenty-eight mortgage brokers in the proposed class are business competitors, and that plaintiffs' various claims assert that the class members were injured through a decrease in the volume of their business. Since the market for mortgage loan originations is limited, Delaware Trust maintains that each of the twenty-eight potential class members must compete with the others in claiming that the lost business would have gone to it rather than to another member of the class. Thus, the argument concludes, the interests of each named plaintiff are antagonistic both to the interests of the remaining class members and to those of the other named plaintiffs, and therefore plaintiffs cannot meet the representativeness requirement of Rule 23(a)(4).

In examining this argument, we note that for plaintiffs to establish their antitrust claims, each member must demonstrate that defendants' actions caused it to lose some quantity of business. Given a limited market, proof by one plaintiff that it would have handled a specific mortgage origination would operate to exclude the claims of other class members that they would have received this business. Moreover, this Court has held that when potential class members in an antitrust suit are business competitors, and their claims involve "amounts of business *not done* and without the slightest objective guidelines for apportioning individual damages among the class members," this creates a conflict of interest as to an essential element of the antitrust claims. *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 50 (D.Del.1974) (emphasis in original). Such a conflict may be "so overriding" that the plaintiffs cannot meet the representa-

---

included evidence of memoranda prepared by certain realtors and information received by customers stating that they should not deal with mortgage brokers. (D.I. 43 at 50–54). This evidence included: Ann Riley deposition (D.I. 39A, Ex. 7 at 18–21); Affidavit of Neill M. Thompson (D.I. 32); Affidavit of Mary F. Thompson (D.I. 33); and Affidavit of Gregory Kushner (D.I. 36).

tiveness requirement. *Id.* at 51. Similarly, the District Court for the District of New Jersey has found that "cases in the Third Circuit consistently support the view that where the class members are competitors in a limited market, the named plaintiff's attempts to maximize its damage recovery will conflict with the interests of the other class members and class certification should be denied." *Glictronix Corp. v. American Telephone & Telegraph Co.*, 603 F.Supp. 552, 585 (D.N.J.1984).

In the present suit, plaintiffs assert that the "objective guidelines" for allocating the lost business among the potential class members would be those followed in any case involving lost profits. While it is not clear whether such a market share analysis would be sufficient, this action may be distinguished from *Barnett* and *Glictronix*. First, the origins of the present dispute are traceable to the distribution of the truncated Sorber article in the spring of 1989, and the group of competitors allegedly excluded by defendants' conduct has twenty-eight clearly defined members. Consequently, the market shares of the potential class members prior to that time may provide some objective guidelines for allocating lost business. This contrasts sharply with the situations involved in *Barnett*, 64 F.R.D. at 49 ("no practicable or reliable way to make a determination of the approximate size or membership of the class") and in *Glictronix*, 603 F.Supp. at 586 (under market share approach "class members which dropped out of the market or delayed entering it because of [defendant's] practices would be foreclosed from recovery").

In addition, after *Barnett* was decided, the Third Circuit held in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) that the need to calculate *actual* damages on an individual basis should not preclude class certification on liability issues. *Id.* at 456. Since only some minimal amount of damage to each member need be shown to establish fact of damage, the conflict among potential class members in proving this element is much less than that involved in demonstrating the extent of actual damages to each member. Thus, although plaintiffs' interests in proving fact of damage are potentially in conflict with the interests of those they seek to represent, when proof of actual damages is separated out, the conflict is not nearly as great as that confronting the *Barnett* Court. *See* 64 F.R.D. at 50–51 (conflict of interest "on an essential element of the cause of action, viz., the fact *and amount* of damages individually suffered" (emphasis added)).

Therefore, although we find that all twenty-eight potential class members are business competitors and that to some extent plaintiffs' interests conflict with the interests of those they seek to represent, we do not agree that this conflict is "so overriding" to itself preclude class certification. *See Barnett*, 64 F.R.D. at 51. As a result, we conclude that plaintiffs could adequately represent the proposed class as required under Rule 23(a)(4).

## III. THE RULE 23(b) OPTIONS

### A. *Rule 23(b)(2)*

 As stated above, a class may be certified under Rule 23(b)(2) if the defendants "acted or refused to act on grounds generally applicable to the class," and the plaintiffs primarily seek injunctive relief. *See Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Plaintiffs are able to meet the first aspect of this standard, because the alleged acts of defendants in distributing the truncated Sorber article were generally applicable to all twenty-eight brokers on Sorber's list.

Plaintiffs assert that they also satisfy the second element of this standard because appropriate relief in this action "requires more than mere monetary damages." Plaintiff's Opening Brief at 24. When, however, "the realities of the litigation" demonstrate that the suit has been brought primarily for money damages, it may not be maintained as a (b)(2) class action. *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School Dist. of*

382

*Lancaster*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). This is true even if some injunctive relief may be appropriate at some point in the litigation. *Id.* For this reason, it is generally inappropriate in an antitrust suit seeking treble damages to certify a class under Rule 23(b)(2). *In re Sugar Antitrust Litigation*, 73 F.R.D. 322, 341–42 (E.D.Pa.1976); *cf. Weiss*, 745 F.2d at 804–07, 811 (certification of class under Rule 23(b)(2) appropriate in antitrust case seeking injunctive relief under Section 16 of the Clayton Act and not treble damages under Section 4).

Plaintiffs' prayer for relief as to the counts of the complaint remaining in this action does include a request for an injunction enjoining further anticompetitive activities. This petition is dwarfed, however, by plaintiffs' requests for compensatory damages, treble damages, and punitive damages. Moreover, plaintiffs have not alleged that defendants' acts have been continuing, and consequently it appears from the complaint that monetary relief would be more appropriate than an injunction. Thus, we find that under "the realities" of this litigation, plaintiffs' complaint primarily seeks damages, and the claim for injunctive relief is only incidental. Therefore, were this action to be certified as a class action, it would have to be certified under Rule 23(b)(3).

**B. *Rule 23(b)(3)***

■■■■ As already noted above, we may certify a class under Rule 23(b)(3) if plaintiffs demonstrate first, the predominance of common questions of law or fact over individual issues, and second, the superiority of a class action over other available methods of adjudication. *School Asbestos Litigation*, 789 F.2d at 1010. In examining whether common questions predominate under the first prong of this test, we must focus on the issues required to establish liability. As we have stated, should it be necessary to calculate the amount of damages for each class member on an individual basis, this would not preclude class certification. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280,

55 L.Ed.2d 791 (1978). Moreover, among the elements of the several causes of action, proof of certain issues may so advance the litigation that these questions may be said to predominate. As a result, common issues may predominate under Rule 23(b)(3) even if their resolution does not alone establish liability. *School Asbestos Litigation*, 789 F.2d at 1010.

In order to determine whether common issues predominate, we must first set forth the various elements that plaintiffs must prove to establish liability. The claims remaining in this action are three antitrust counts seeking treble damages under Section 4 of the Clayton Act and alleging boycott, restraint of trade, and monopolization in violation of Sections 1 and 2 of the Sherman Act; a claim of tortious interference with business relations; and a count charging conspiracy. As outlined above, establishing liability on the three antitrust counts requires both proof that defendants' conduct violated the Sherman Act, and proof that as a result, plaintiffs suffered actual injury so that they are entitled to treble damages under Section 4 of the Clayton Act. *See Bogosian*, 561 F.2d at 454–56. More specifically, the elements of a claim under Section 4 of the Clayton Act are (1) an antitrust violation; (2) fact of damage; and (3) the amount of damages. *American Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir.), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984).

The antitrust violation element in turn requires proof of a claim under Section 1 or 2 of the Sherman Act. Thus, to establish their claims of boycott and restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1988), plaintiffs must prove (1) the existence of a contract, combination, or conspiracy; (2) a restraint on trade; and (3) an effect on interstate commerce. *Weiss v. York Hosp.*, 745 F.2d 786, 812 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Plaintiffs have also alleged an attempted monopolization in violation of Section 2, which requires proof of (1) possession of monopoly power in the particular

market; and (2) willful acquisition of such power. *Id.* at 825 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)).

As for plaintiffs' claims under state law, to prove tortious interference with existing and prospective business relations under Delaware law, plaintiffs must establish: (1) the existence of business relations or the reasonable probability of a business opportunity; (2) that defendants intentionally interfered with that relation or opportunity; (3) proximate causation; and (4) damages. *See DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del.1981). Finally, a claim of civil conspiracy under Delaware law requires proof of: (1) a combination of two or more persons; (2) an unlawful act conducted in furtherance of the conspiracy; and (3) actual damage. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del.1987).

Each of these causes of action includes certain issues that may be established by examining only the defendants' conduct, and which may therefore be proven in common for all potential class members. One such common question is whether defendants formed a combination, an issue which is an element not only of the antitrust claims but also of the conspiracy count. Similarly, the specific conduct of defendants that allegedly interfered with plaintiffs' business relations, namely distribution of the truncated Sorber article, may also be proven in common. In addition, it appears that most elements of a violation of the Sherman Act may be proven without examining the effect on individual class members. For example, under Section 2, the question of whether defendants possessed monopoly power in the market may be determined by examining defendants' market position relative to the market as a whole. Moreover, the Third Circuit has held that the effect on interstate commerce element under Section 1 of Sherman Act may be established without focusing on the effect on the individual plaintiffs. *See Weiss*, 745 F.2d at 824–25.

On the other hand, many elements of plaintiffs' claims may only be proven individually. Most significantly, each of the five causes of action requires proof of actual injury to plaintiffs, and in the present action, this element is not subject to proof on a common basis. For antitrust claims, proof of the fact of damage may be made on a common basis provided that the common proof demonstrates some damage to each class member. *Bogosian*, 561 F.2d at 454. Whether or not this is possible will depend on the type of antitrust violation involved. In *Bogosian*, the Third Circuit found that the fact of damage could be proven in common in a case involving payment of an illegal overcharge. The court stated that the plaintiffs could prove this element by demonstrating that but for the conspiracy, free market prices would have been lower, and that each plaintiff made some purchases at the higher price. *Id.* at 455; *accord In re Glassine & Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302, 306 (E.D.Pa.1980). However, when, as here, plaintiffs claim lost profits from lost business, "it would seem that [the] proof necessarily would focus on the operation of [each individual] business." *Bogosian*, 561 F.2d at 455; *accord Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 54–56 (D.Del.1974).

In the present action, plaintiffs allege that they suffered a loss of business when defendants distributed the truncated Sorber article to various persons, including real estate agents, and the real estate agents in turn ceased referring business to plaintiffs and further disparaged plaintiffs' services. Whether, to whom, and to what extent defendants distributed the truncated Sorber article (as opposed to the protected distribution of the complete article in connection with the lobbying campaign to regulate mortgage brokers) or otherwise publicized its contents are issues that are common to all potential class members. Yet, assuming plaintiffs had proven that a group of real estate agencies had received and relied upon the truncated article, this would not indicate that these real estate agents would otherwise have referred any business to any *particular* class member. The specific real estate agents who received the truncated article might never

have established or planned to establish any business relationship with certain class members.

This situation differs markedly from a case involving illegal overcharges. In a price fixing case, after the existence of the overcharge has been proven on a common basis for all class members, an individual member can simply produce its business records to demonstrate that it made some purchases at the higher price. The individual harm stems from business that was completed and is therefore easily proven. In a lost profits case, by contrast, the individual injury derives from the fact that business never occurred, and it is no simple task to demonstrate what might have happened but for defendants' conduct. This is especially true here, because the real estate agencies' referrals for mortgage loan originations are likely guided, at least in part, by the subjective preferences of the individual consumers. There is therefore no straightforward method to show that a given mortgage broker would have received a greater volume of business but for defendants' conduct. Thus, the impact of the antitrust violation cannot be proven without substantial inquiries into the individual circumstances of each class member.

This analysis also applies to proof of the actual injury elements of plaintiffs' tort and conspiracy claims. These causes of action similarly require proof of actual harm as a prerequisite to a finding of liability, and the injury alleged under these claims is the same harm of loss of business. Consequently, the same methods of proof would be involved, including extensive inquiries into the individual business relationships of each potential class member. In addition, plaintiffs' claim for tortious interference with business relations requires proof of the existence of business relations or the reasonable probability of a business opportunity, and this element must also be established on an individual basis.

Having set forth the various common and individual issues, we must compare them to determine whether common questions predominate. The principal issues subject to proof on a common basis are the questions of the existence of a conspiracy and the elements of the various alleged violations of the antitrust laws. On the individual issue side of the balance is the fact of damage requirement. Both types of issues will require extensive proof. Moreover, although proof in common of a conspiracy in violation of the antitrust laws would significantly advance this litigation, *see School Asbestos Litigation*, 789 F.2d at 1010, proof of the individual fact of damage issues will in many ways be more complex. The allegations that defendants implemented a conspiracy through the truncated version of the Sorber article, though strongly contested, are relatively straightforward, whereas proving fact of damage requires extensive inquiries into the relationships that various real estate agencies had developed with each of the twenty-eight potential class members. As a result, "[t]he fact that the existence of a conspiracy in restraint of trade is central to this litigation does not dictate the conclusion that the conspiracy issue predominates." *Township of Susquehanna v. H and M, Inc.*, 98 F.R.D. 658, 666 (M.D.Pa. 1983).

Given this abundance both of common and individual issues, we are unable to determine from the record which type of questions will actually predominate at trial. Were plaintiffs able to meet all four class action prerequisites under Rule 23(a), we might exercise our discretion to conclude that there are sufficient common issues to predominate under Rule 23(b)(3). *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir.1977) (district court may exercise discretion in assessing predominance and superiority elements), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Yet, plaintiffs have failed to establish numerosity as required by Rule 23(a)(1), and therefore we need not decide whether such an exercise of discretion would be appropriate.

In addition to the predominance requirement, certification of a class under Rule 23(b)(3) is only appropriate when a class action would be superior to other possible methods of adjudication. The rule sets forth four factors to be considered in mak-

ing this determination: (1) whether other members wish to control the action or bring separate actions; (2) whether other suits have already been commenced; (3) whether it is desirable to concentrate the litigation in a particular forum; and (4) whether difficulties are likely to be encountered in managing a class action.

There is no evidence that other potential class members have filed their own suits or otherwise indicated an interest in controlling the litigation, so the first two factors do not pose any obstacles to class certification. Yet, under the third factor, were it desirable to concentrate the litigation in this Court, there are no advantages to be gained from the class action device. Most, if not all, potential class members would likely bring their separate suits in this district anyway, since all operate in Delaware and all defendants are located here. Moreover, we have already noted that the number of potential class members is relatively small and that joinder would be feasible. Under the fourth factor, we find that the extent and complexity of the individual issues in this case could potentially make it difficult to litigate this suit as a class action. Most importantly, since under Rule 23(a)(1) joinder would not be impracticable, we simply do not see any advantage to be gained by certifying this case as a class action. Thus, we conclude that the class action device would not be superior to other methods of adjudication.

Plaintiffs contend that we should nonetheless certify the class as to only the common issues pursuant to Rule 23(c)(4)(A). Were our inability to find that common issues predominate the only obstacle to class certification, we would consider whether such partial certification would be "appropriate" under that rule. Plaintiffs, however, have also failed to establish one of the four class action prerequisites under Rule 23(a). Therefore, it would not be appropriate to certify a class even solely as to the common issues in this litigation.

## CONCLUSION

Thus, plaintiffs are unable to comply with one of the four prerequisites to class certification under Fed.R.Civ.P. 23(a), namely the numerosity requirement. In addition, this action fails to meet the standards of any one of the three subsections of Fed.R.Civ.P. 23(b). Therefore, plaintiffs' motion for class certification will be denied. An appropriate order will follow.