**YEAGER'S FUEL, INC., et al.**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY.**

**LOSCH BOILER SALES & SERVICE COMPANY**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY.**

Civ. A. Nos. 91–5176, 92–2359.

United States District Court, E.D. Pennsylvania.

April 27, 1995.

---

Wayne M. Thomas, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, for Losch Boiler Sales & Service Co.

Christopher C. Fennell, Jeffrey H. Howard, Peter B. Work, Crowell and Moring, Washington, DC, for Pennsylvania Power & Light Co.

Kirchoff, Inc., Lancaster, PA, pro se.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff Losch Boiler Sales & Service Company ("Losch"), a retail fuel oil dealer that supplies and installs heating equipment, alleges that Defendant, Pennsylvania Power & Light Company ("PP & L") violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, section 3 of the Clayton Act, 15 U.S.C. § 14, and state law[1] by unlawfully restraining trade in the residential heating fuel and equipment markets in PP & L's service area. Specifically, Losch alleges that PP & L offered and paid cash rebates to (1) plumbing and heating contractors, builders, and developers who agreed to install electric heat pumps, rather than fossil fuel-based heating equipment, in new residential construction ("New Construction Claims");[2] and (2) homeowners who agreed to convert from fossil fuel to electric heating equipment not supplemented by any fossil fuel heating device ("Conversion Grant Claims").[3] Pursuant to Federal Rule of Civil Procedure 23(b)(3), Losch seeks certification on behalf of all persons who sold retail fuel oil or sold, installed, or serviced oil heating equipment since April 22, 1988[4] within PP & L's service area. For the reasons set forth below, I shall deny Losch's motion.

1. Losch alleges the following state law claims: common law restraint of trade, tortious interference with contractual relations, unfair competition, and civil conspiracy.

2. Losch alleges that contractors, builders, and developers could only receive a rebate for heat pumps that were ordered from and "installed by one of the various heat pump manufacturing and installation companies selected by PP & L, which include, without limitation, members of the Central Eastern Pennsylvania Heat Pump Association ['CEPHPA']." Pl.'s Compl. ¶ 16.

3. On October 5, 1992, I granted summary judgment in favor of PP & L and against Losch on the New Construction Claims because I concluded that state action immunity shielded PP & L's alleged conduct from antitrust liability. *See Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.* 804 F.Supp. 700 (E.D.Pa.1992) (*Yeager's I*), *aff'd in part and remanded in part,* 22 F.3d 1260 (3d Cir.1994) (*Yeager's II*). The Court of Appeals agreed that "PP & L is immune from antitrust liability for offering builders and developers cash grants and other incentives ... for installation of high-efficiency electric heating systems." *Yeager's II,* 22 F.3d at 1263. However,

## I. STANDARD OF REVIEW

A plaintiff seeking class certification "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). Rule 23(a) provides that:

One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Rule 23(b)(3) is satisfied if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[5]

Fed.R.Civ.P. 23(b)(3).

■ A district court ruling on a motion for class certification should set forth findings of

the Court of Appeals stated that "PP & L is not immune from antitrust liability to the extent it made these offers contingent upon 'all-electric development agreements.'" *Id.* All-electric development agreements "block the entry of fossil fuels, especially gas, into new developments," and are unrelated to Pennsylvania's "state policy in favor of energy conservation and load management." *Id.* n. 1. Thus, with respect to the New Construction Claims, the scope of the remand encompasses incentives that PP & L made contingent upon all-electric development agreements.

On June 27, 1994, following remand, Losch filed an Amended Complaint asserting the Conversion Grant Claims.

The following discussion assumes familiarity with the *Yeager's I* and *Yeager's II* opinions.

4. Losch's complaint was filed on April 22, 1992; the federal antitrust claims are governed by a four year statute of limitations. *See* 15 U.S.C.A. § 15b (West Supp.1995).

5. The Rule further provides that
 The matters pertinent to the findings include:
 (A) the interest of members of the class in

fact and conclusions of law. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 794–95 (3d Cir.1995); *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

## II. DISCUSSION

 Losch initially approached the issue of class certification in a somewhat abbreviated fashion. First, Losch questioned why PP & L had not simply stipulated to class certification. *See* Pl.'s Reply Mem. at 9–10; Transcript of 3/31/95 Hearing ("Tr.") at 24. Even if PP & L had so stipulated, however, I would still conduct the inquiry that Rule 23 mandates. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (stating that district court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative"). Second, Losch repeatedly argued that class certification was necessary to punish PP & L and prevent it from retaining allegedly "ill-gotten gains." *See* Pl.'s Resp.Mem. at 11; Tr. at 62, 64, 68. For purposes of class certification, however, I must not focus on the egregiousness of the defendant's alleged conduct, but instead on whether the class action mechanism may be fairly employed in this particular case. *See, e.g., General Motors,* 55 F.3d at 785 ("the procedural requirements of Rule 23 ... [help the court] assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interests"); *Baby Neal,* 43 F.3d at 55 ("The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances."). With these principles in mind, I shall address each element of Rule 23(a) and Rule 23(b) separately.

> individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficul-

### A. Numerosity

 A party seeking class certification must demonstrate not only that the proposed class is numerous, but that the class is so large that joinder is impracticable. Rule 23(a)(1). Although PP & L has not challenged certification on the basis of numerosity, Losch asserts that the requirement is satisfied in this case because the proposed class is large (at least 150–225 members),[6] and because "[c]ourts have consistently found that the numerosity requirement is satisfied by classes similar to, or smaller in size than the class for which certification is sought herein." Pl.'s Mot. at 8–9. Based on the current record, and in view of the asserted size of the proposed class, I conclude that Losch has established numerosity.

### B. Commonality

 "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal,* 43 F.3d at 56. Losch asserts, and PP & L does not dispute, that it shares the same factual and legal questions with respect to whether PP & L engaged in conduct that restrained the market for heating fuel and equipment in PP & L's service area. Because each class member must prove that PP & L violated the antitrust laws, *see infra* part D(1), I conclude that Losch shares at least one question of law or fact with the prospective class, and therefore satisfies the commonality requirement.

### C. Typicality

 "Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal,* 43 F.3d at 55. The requirement is satisfied if "the class representatives themselves present

> ties likely to be encountered in the management of a class action.
> Fed.R.Civ.P. 23(b)(3).

**6.** PP & L asserts that the proposed class consists of more than 600 members, Def.'s Surrep.Br. at 1.

those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992) (quoting *Eisenberg*, 766 F.2d at 786).

■■■ PP & L asserts that Losch cannot satisfy the typicality requirement with respect to the Conversion Grant Claims because Losch never lost any fuel oil business in 1990 as a result of customers converting to electric heating systems. Losch disputes that it lost no business to conversions, but has produced no evidence of actual loss. However, even if PP & L's assertion of non-loss is correct, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.... Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58 (internal quotation and citations omitted). Because Losch's New Construction and Conversion Grant Claims rely on a common legal theory and appear to stem from a single course of conduct by which PP & L allegedly sought to displace fossil fuel in residential heating in PP & L's service area, and because Losch has pointed to some record evidence that it suffered loss with respect to the New Construction Claims, *see* Pl.'s Supp.Mem.Att. 1 ¶ 8, I conclude that Losch has sufficiently established typicality.

### D. Adequacy of Representation

■■ To establish adequate representation, "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth*, 980 F.2d at 923 (internal quotation and citations omitted). PP & L does not challenge the qualifications and experience of Losch's counsel,

but asserts that Losch has interests that are antagonistic to those of the class. Specifically, PP & L asserts that (1) the class consists of competitors in a limited market claiming damages for market foreclosure; (2) the class consists of numerous subgroups with conflicting business interests; and (3) class members have potentially conflicting interests regarding settlement. I shall address these issues in turn.

### 1. Competitor Class in Limited Market Seeking Damages for Lost Business

■■■ An antitrust plaintiff seeking treble damages under § 4 of the Clayton Act must prove (a) an antitrust violation; (b) fact of damage; and (c) amount of damage. *See, e.g., Weiss v. York Hosp.*, 745 F.2d 786, 805 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *American Bearing Co. v. Litton Indus.*, 729 F.2d 943, 948 (3d Cir.), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Fact of damage in this context requires proof of "some" actual injury to the plaintiff's business or property caused by defendant's antitrust violation. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 (1969); *Allen–Myland, Inc. v. International Business Mach. Corp.*, 33 F.3d 194, 201 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 684, 130 L.Ed.2d 615 (1994); *Weiss*, 745 F.2d at 806; *Bogosian*, 561 F.2d at 454.[7] Where the alleged antitrust violation is market exclusion, the plaintiff demonstrates fact of damage by making a particularized showing that she lost some business as a result of the defendant's anticompetitive conduct. *See Bogosian*, 561 F.2d at 454; *Christiana Mortgage v. Delaware Mortgage Bankers Association*, 136 F.R.D. 372, 380 (D.Del.1991). The plaintiff cannot establish the necessary causal connection, however, if the business loss

---

7. By contrast, a plaintiff seeking only injunctive relief under § 16 of the Clayton Act, 15 U.S.C.A. § 26 (West Supp.1995), may establish fact of damage merely by showing threatened loss or damage. *See Weiss*, 745 F.2d at 806.

"was attributable to [plaintiff's] lack of desire, its limited production capabilities, or to other factors independent of [defendant's] unlawful conduct." *Zenith*, 395 U.S. at 126–27, 89 S.Ct. at 1578.[8]

 In the class action context, each member must establish fact of damage in order to recover actual damages. *See Christiana Mortgage*, 136 F.R.D. at 380. *Cf. J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1532 (3d Cir.1990) ("[T]o establish to entitlement to section 4 treble damages, [plaintiff] must demonstrate a causal connection between the [anticompetitive conduct] and specific damage suffered by it."), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). If the class consists of competitors in a limited market seeking damages for lost business, however, there are at least two sources of conflict between the named representative and absent class members that arise out of proving fact of damage.

First, because each member must prove "some" lost business, and because the market is limited, the named representative's proof of loss necessarily limits or intrudes upon every other member's ability to prove the same. *See Glictronix Corp. v. American Tel. & Teleg. Co.*, 603 F.Supp. 552, 585 (D.N.J. 1984); *Am/Comm Systems, Inc. v. American Telephone & Telegraph Co.*, 101 F.R.D. 317, 322 (E.D.Pa.1984); *Franklin Container Corp. v. International Paper Co.*, 1982 WL 1958, at *3 (E.D.Pa. May 12, 1982); *Southern Snack Foods, Inc. v. J & J Snack Foods Corp.*, 79 F.R.D. 678, 682 (D.N.J.1978); *Chestnut Fleet Rentals, Inc. v. Hertz Corp.*, 72 F.R.D. 541, 546 (E.D.Pa.1976); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64

F.R.D. 43, 50–51 (D.Del.1974); *William Goldman Theatres, Inc. v. Paramount Film Distrib. Corp.*, 49 F.R.D. 35, 41 (E.D.Pa. 1969).

Second, because the defendant typically will argue that the plaintiff's business loss was attributable to factors independent of the defendant's unlawful conduct, the named representative must show that it, as opposed to other class members, would have secured at least some of the lost business. But in so doing, the named representative impedes an absentee's ability to show causation. Further, the named representative's interest in maximizing its own recovery provides a strong incentive to minimize the recovery of other class members, which may be accomplished by showing that any business lost by other class members, as opposed to itself, was caused by some factor independent of the defendant's anticompetitive conduct. I therefore reject Losch's assertion that because the class members share a common interest in finding liability, the "only possible divergence of interest is in the manner in which the settlement fund would be shared." Tr. at 5. *Cf. General Motors*, 55 F.3d at 800 (disapproving as too narrow the proposition that there is no intra-class conflict in a settlement class where "all class members are united in asserting a common right") (internal quotation and citation omitted).[9]

PP & L has offered evidence that class members vigorously compete against one another in a limited market for retail fuel oil sales, and for home heating equipment sales, installation, and maintenance. *See* Def.'s Opp'n Mem. Ex. E at 7, 12–13; *id.* Ex. G at 7–16; *id.* Ex. I ¶ 6; *id.* Ex. J ¶¶ 1–5; *id.*

---

**8.** I reject Losch's assertion, pressed at oral argument, that a plaintiff alleging market exclusion may establish fact of damage simply by showing that she was a participant in a "rigged market." *See* Tr. at 6, 20. Although PP & L's conduct may have excluded some or all of the putative class members from the market for home heating equipment and fuel, the only class members entitled to recover treble damages are those members that establish fact of damage by showing actual injury caused by PP & L's conduct. A fuel oil dealer who, for example, lacked the ability to supply additional fuel during the period in question, and was therefore unable to garner any additional business, is technically a market participant, but cannot establish fact of damage.

**9.** Losch cites *Weiss* for the proposition that a class of competitors claiming damages for lost business in a limited market may be certified. Losch's reliance on *Weiss* is misplaced. Unlike this case, in which Losch seeks (b)(3) certification, the plaintiff class in *Weiss* primarily sought injunctive relief and (b)(2) certification, *see Weiss*, 745 F.2d at 807, and the Court of Appeals specifically limited its opinion to that issue. *See id.* at 793 ("We thus limit this opinion to a review of questions raised by the district court's issuance of an injunction under section 16 [of the Clayton Act].").

Ex. K ¶¶ 1–5; *id.* EX. L ¶¶ 7, 11; *id.* Ex. M ¶¶ 1–5; *id.* Ex. N ¶ 6. Losch does not dispute that class members are competitors in a limited market,[10] but instead asserts that the class members' existing market share provides an objective guideline for apportioning each member's share of business not done. Although market share data may provide a primitive approximation for determining the amount of damages, such data, by itself, fails to overcome the likely intra-class conflict with respect to each member's ability to demonstrate fact of damage. *Cf. Zenith,* 395 U.S. at 126–29, 89 S.Ct. at 1578–79 (fact of damage may not be inferred where other factors, apart from defendant's anticompetitive conduct, are responsible for plaintiff's lost business). Market share data, by itself, fails to account for each member's ability to perform, and effectiveness at securing a greater amount of business, relative to that of the other class members. *Cf. Glictronix,* 603 F.Supp. at 586 (objective formula for allocating amount of damages based on assessment of class members' competitive effectiveness, but which only roughly predicted each member's share of business not done, will not prevent conflict among class members).

■ Nevertheless, Losch asserts that even if there is intra-class conflict regarding damages, (a) the proposed class may be certified for liability purposes because any conflict will not materialize until damages are awarded; and (b) even if intra-class competition defeats Rule 23(b)(3) certification, Rule 23(b)(2)[11] certification is appropriate. I disagree as to both assertions. First, because fact of damage is an element of liability, *see Christiana Mortgage,* 136 F.R.D. at 380 (*citing Bogosian,* 561 F.2d at 454–56), intra-class conflict permeates the entire case. *Chestnut Fleet Rentals,* 72 F.R.D. at 546.[12] *But see Christiana Mortgage,* 136 F.R.D. at 381 (denying certification, but concluding based on specific facts that intra-class conflict regarding proof of fact of damage was not " 'so overriding' to itself preclude class certification" based on inadequate representation).[13]

10. Seven class members aver that they do not individually compete with Losch for fuel oil sales and heating equipment sales, installation, and maintenance. *See* Pl.'s Reply Mem. Exs. A–G. Nevertheless, despite these averments, Losch does not dispute that class members generally are competitors in a limited market for fuel oil sales and for heating equipment sales, installation, and maintenance. *See* Pl.'s Reply Mem. at 14 n. 4 (noting the "fact that the class contains competitors"); Pl.'s Resp. Mem. at 5 ("Plaintiff does not dispute that all class members sell the same products as other class members, some in the same geographic areas as some others.").

11. The Rule provides that

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

12. I note that the Court of Appeals for the Third Circuit has held that the need to calculate actual damages "on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian,* 561 F.2d at 456. However, that holding pertains to the requirement under Rule 23(b)(3) that common issues predominate over individual issues. *Bogosian* does not hold that a 23(b)(3) class may be certified even though the requirement of adequate representation under Rule 23(a)(4) cannot be satisfied because of intra-class conflict.

13. *Christiana Mortgage,* however, is factually distinguishable from this case. The plaintiffs, six mortgage brokers, alleged that defendants published a libelous article intended to exclude plaintiffs from the market for mortgage loan originations. *Christiana Mortgage,* 136 F.R.D. at 375–76. The article listed the names and addresses of twenty-eight brokers, including the named plaintiffs. *Id.* at 376. Plaintiffs sought class certification on behalf of the twenty-eight brokers, all competitors in a limited market for mortgage loan originations, alleging that the proposed class members suffered business loss as a result of the allegedly defamatory article. *Id.* at 376–77, 380. Significantly, the court noted that the class consisted of "twenty-eight clearly defined members," *id.* at 381, "all located within a small geographic area," *id.* at 378, whose alleged injuries were traceable to the distribution of a single allegedly libelous article. *Id.* at 381. By contrast, Losch seeks to represent a class of several hundred businesses, engaged in widely ranging business activities (albeit related to home heating fuel and equipment), covering a 10,000 square mile geographic area, *see* Pl.'s Motion at 3, claiming injuries resulting from numerous incentive programs over several years. Under such circumstances, and based on the

Second, "where the 'realities of the litigation' demonstrate that the suit has been brought primarily for money damages, it may not be maintained as a (b)(2) class action." *Christiana Mortgage*, 136 F.R.D. at 381–82 (citing *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986)). *See also Al Barnett*, 64 F.R.D. at 53 ("[S]ince the recovery of treble damages appears to be the predominant consideration even though injunctive relief is also sought, if the case is maintainable as a class action at all, it should be classified ... under Rule 23(b)(3) rather than 23(b)(1) or (2)."). Because Losch primarily seeks monetary damages, certification under Rule 23(b)(2) is inappropriate.

Accordingly, because of the inherent conflict between Losch and the absent class members with respect to proving fact of damage, I conclude that Losch's interests are antagonistic to those of the class.

### 2. Divergent Interests Within the Class

■ PP & L also asserts that Losch cannot satisfy the adequacy requirement because the proposed class consists of members with widely divergent interests. Specifically, PP & L asserts that the class consists of (a) CEPHPA members who benefitted from PP & L's challenged incentive programs, and non-CEPHPA members, such as Losch, who did not participate in the challenged conduct;[14] (b) fuel dealers who exclusively sold oil during the relevant time period, and fuel dealers such as Losch who sold fuel oil and

other competing fossil fuels;[15] and (c) businesses that install and maintain heating equipment but do not sell fuel oil, and businesses such as Losch that principally sell fuel oil. I agree that Losch has failed to demonstrate that it may adequately represent the various groups that comprise the proposed class. *See Pennsylvania Dental Ass'n v. Medical Serv. Ass'n*, 745 F.2d 248, 263 (3d Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 303 (1985) (certification properly denied where class was comprised of two distinct groups having inherently conflicting interests, and the named representative was a member of only one of the groups). Although Losch has suggested that any potential conflict of interest may be alleviated by certifying appropriate subclasses, *see* Fed.R.Civ.P. 23(c)(4)(B), the various possible permutations of subclasses counsel against certification.[16] *See* MCL 2d § 30.16 n. 36 ("If conflicts and differences among class members are so sharp that a number of small subclasses results, perhaps no class was justified in the first place."). Accordingly, Losch has failed to demonstrate that it can adequately represent the various constituencies that exist within the proposed class.

### 3. Settlement Conflict

■ The parties do not dispute that (a) in 1991, before Losch filed this action, the Pennsylvania Petroleum Association ("PPA"), a trade group of fuel oil dealers and gasoline distributors operating in Pennsylvania, appropriated $100,000 to partially fund the

---

current record, I can only fairly conclude that intra-class conflict regarding proof of fact of damage is "so overriding" to preclude class certification.

**14.** PP & L has submitted six affidavits from members of the proposed class who aver that, as CEPHPA members, they have benefitted from PP & L's challenged incentive programs. *See* Def.'s Opp'n Mem. Ex. F ¶ 14; *id.* Ex. H ¶ 11; *id.* Ex. K ¶ 7; *id.* Ex. L ¶ 15; *id.* Ex. M ¶ 7; *id.* Ex. N ¶ 8. Additionally, Losch has stipulated that some members of the proposed class have not participated or benefitted from PP & L's challenged incentive programs. *See id.* Ex. D ¶ 19. Although Losch argues that there is no evidence that any putative class member actually participated in PP & L's challenged programs, *see* Pl.'s Reply Mem. at 23, Losch, as the party that bears the burden of proof on its motion, has failed to

point to any record evidence supporting that assertion or contradicting PP & L's submissions.

**15.** The record indicates that Losch sold fuel oil and coal during the relevant limitations period. *See* Def.'s Opp'n Mem. Ex. P at 43–45; Pl.'s Supp. Mem. Att. 1 at 24.

**16.** Some of the possible subclasses are: (1) CEPHPA members that participated in PP & L's incentive programs; (2) CEPHPA members that did not participate in PP & L's challenged programs; (3) participating CEPHPA members that principally sell fuel oil; (4) participating CEPHPA members that sell little or no fuel oil; (5) non-participating/predominantly fuel oil CEPHPA members; (6) non-participating/little-oil CEPHPA members; (7) non-CEPHPA/predominantly fuel oil members; and (8) non-CEPHPA little-oil members.

*Yeager's* litigation; (b) the *Yeager's* plaintiffs agreed not to settle their litigation unless a provision has been made to repay PPA the amount appropriated and expended, or unless PPA agrees otherwise; (c) the *Yeager's* plaintiffs are also class members; and (d) Wayne Thomas, counsel for the proposed class, represented the Pennsylvania Petroleum Association ("PPA") during discovery proceedings in the *Yeager's* action. Based on these undisputed facts, PP & L asserts that there is a potential for intra-class conflict between class members who agreed to repay PPA funding from any settlement agreement, and those who did not. PP & L also asserts that Mr. Thomas cannot, without a conflict of interest, advise PPA about its rights to enforce the repayment agreement with the *Yeager's* plaintiffs, and simultaneously advise class members about any possible settlement. Losch replies that PPA has no relationship with the *Losch* litigation, the repayment agreement does not apply to Losch, Mr. Thomas' representation of PPA was very limited, and that "[t]here is no conflict in this litigation until you get to the settlement." Tr. at 16. Losch's arguments cannot prevail.

■ First, a class action must meet the Requirements of Rule 23 whether certified for litigation or settlement. *See General Motors*, 55 F.3d at 778–79, 800. Second, although "all certification orders are conditional until the entry of judgment," *see id.* at 792 n. 14; Fed.R.Civ.P. 23(c)(1), I do not share Losch's optimism that possible conflicts regarding representation during settlement will not taint Losch's representation during litigation. To varying degrees, settlement potential is a facet of every case, and is a consideration that often partly controls the conduct and course of litigation. Thus, Losch's potentially conflicting interests with some members of the proposed class [17] regarding settlement raise serious concern regarding its ability to adequately represent the proposed class for litigation.

**17.** It is immaterial that PPA allegedly has no control over the *Losch* litigation. The crucial issue is whether Losch may adequately represent the interests of all class members, when some class members have a preexisting settlement obligation that may adversely affect the litigation and settlement interests of absentees.

Accordingly, because of the inherent conflict regarding proof of fact of damage, and the potential conflict between the various factions within the proposed class, and intra-class conflict regarding settlement, I conclude that Losch has failed to establish adequacy of representation under Rule 23(a)(4).

### E. Predominance of Common Issues

■ PP & L asserts that because each member must prove fact of damage, individual issues will predominate. I agree. Although many issues in this case may be proven on a common basis, *see Christiana Mortgage*, 136 F.R.D. at 383 ("most elements of a violation of the Sherman Act may be proven without examining the effect on individual class members"), possibly many more require individual examination. *See Bogosian*, 561 F.2d at 455 (when an antitrust plaintiff claims lost profits for lost business, "it would seem that his proof necessarily would focus on the operation of his business."). Further, the need to establish injury and causation with respect to each class member will necessarily require a detailed factual inquiry that may overshadow common issues regarding PP & L's alleged conduct. Accordingly, I conclude that Losch has not adequately shown that common issues predominate over individual issues.

### F. Superiority of Class Mechanism

■ Losch asserts that alternatives to a class action—separate actions or joinder— would be inefficient and unfair. I disagree. First, because proof of fact of damage requires scrutiny of each class member's individual business, a class action is not likely to offer any economies with respect to that element of liability. Second, the class device does not avoid the serious inherent conflict with respect to each member's competing claims for business not done. Third, although six members of the proposed class have averred that individual antitrust litigation "could be prohibitive," *see* Pl.'s Reply Mem. Ex. A ¶ 6; *id.* Ex. B ¶ 7; *id.* Ex. C

¶ 8; *id.* Ex. D ¶ 8; *id.* Ex. E ¶ 8; *id.* Ex. F ¶ 8; *id.* Ex. G ¶ 8, Losch has not averred that it will not continue its litigation if certification is denied. Moreover, Losch has stated that the twenty-one *Yeager's* plaintiffs will continue to prosecute their litigation even if class certification is denied. Pl.'s Reply Mem. at 22. By contrast, consolidation is one possible alternative that avoids the serious problems that a class action presents under the unique facts of this case. *See Bogus v. American Speech & Hearing Ass'n,* 582 F.2d 277, 290 (3d Cir.1978). In view of all of the foregoing factors, I conclude that Losch has failed to show the superiority of the class action mechanism.

## III. CONCLUSION

Losch has satisfied the requirements of numerosity, commonality, and typicality. However, Losch has failed to establish adequacy of representation, predominance, and superiority. Accordingly, I shall deny class certification.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of April 1995, I hereby ORDER that

1. Plaintiff Losch Boiler Sales & Service Company's Motion for Class Action Determination (Document No. 2 in Civil Action 92-2359) is DENIED;

2. On or before Friday, May 12, 1995, Plaintiff shall file an Amended Complaint consolidating the allegations set forth in the Complaint (Document No. 1 in Civil Action 92-2359) and the Amended Complaint (Document No. 141 in Civil Action 91-5176); the amended complaint shall not introduce any new allegations, but shall delete class allegations and allegations pertaining to claims that have been dismissed from this action. Because this amendment shall not introduce any new allegations, and is only ordered for sake of clarity, Defendant Pennsylvania Power & Light Co. need not file any responsive pleading.