In re **BEER DISTRIBUTION ANTITRUST LITIGATION.**

No. C 97–20644 SW.

United States District Court, N.D. California.

Nov. 10, 1998.

Joseph W. Cotchett, Bruce L. Simon, Gwendolyn R. Giblin, Cotchett, Pitre & Simon, Burlingame, CA, Roger M. Schrimp, James F. Lewis, Michelle L. Christian, Damrell, Nelson, Schrimp, Pallios & Ladine, Modesto, CA, for plaintiffs.

George R. Corey, Jeffrey D. Manos, Dario de Ghetaldi, Corey, Luzaich, Manos & Pliscka, Millbrae, CA, for Huntington Beach Brewing Co. and Kenneth Allen.

James A. Hennefer, Law Offices of James A. Hennefer, San Francisco, CA, for Lake Tahoe Brewing Co.

Peter E. Moll, Carmine R. Zarlenga, John J. Rosenthal, Howry & Simon, Washington, DC, Robert P. Taylor, Edwin H. Wheeler, Howry & Simon, Menlo Park, CA, Richard M. Steuer, Kaye, Scholer, Fierman, Hays & Handler, New York City, Daniel Kolditz, General Counsel, Anheuser–Busch Inc., for defendants.

## ORDER DENYING WITHOUT PREJU-DICE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

WILLIAMS, District Judge.

Plaintiffs Huntington Beach Brewing Company d/b/a El Toro Brewing Company ("El Toro"), Kenneth Allen d/b/a Anderson Valley

Brewing Company ("Anderson Valley"), Lake Tahoe Brewing Company, Inc. d/b/a Tahoe Basin Beverage Company ("Lake Tahoe"), and St. Stan's Brewing Company ("St. Stan's") each filed separate class action complaints against Defendant Anheuser–Busch, Inc. ("Anheuser–Busch") alleging claims under various federal antitrust statutes. Following consolidation of these four separate actions, Plaintiffs filed a consolidated class action complaint alleging the following five causes of action: (1) exclusive dealing in violation of § 1 of the Sherman Act (15 U.S.C. § 1); (2) exclusive dealing in violation of § 3 of the Clayton Act (15 U.S.C. § 14); (3) concerted refusal to deal and group boycott as a *per se* violation of § 1 of the Sherman Act (15 U.S.C. § 1); (4) concerted refusal to deal and group boycott under the rule of reason pursuant to § 1 of the Sherman Act (15 U.S.C. § 1); and (5) attempted monopolization in violation of § 2 of the Sherman Act (15 U.S.C. § 2).

Plaintiffs now move for class certification and an Order that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below the Court DENIES Plaintiffs' motion without prejudice.

## I.  BACKGROUND

In certain areas of the United States, state law permits beer manufacturers to distribute their own beer to stores, restaurants, and bars. In areas where self-distribution is not permitted, beer manufacturers typically employ distributors, or wholesalers, to distribute beer for them. Distributors have a personal interest in the success of their product lines, as statutes of many states require distributors to purchase the beer they deliver. Therefore, if a particular beer does not sell well, its distributors as well as its manufacturer suffer economically. In most instances, distributors are responsible not only for beer delivery, but also for such other activities as product placement, special promotions, and rotation of overage beer.

Anheuser–Busch is the world's largest manufacturer of beer. As a major beer manufacturer, Anheuser–Busch has an established distribution network. This distribution network includes some Anheuser–Busch-owned distributors and some independent wholesalers. Plaintiffs allege that to increase its share of the beer market, Anheuser–Busch implemented an illegal "100% Share of Mind" campaign with its independent distributors. This campaign was first announced in March 1996, and, according to Plaintiffs, demonstrates anti-competitive conduct by Anheuser–Busch and an antitrust conspiracy with its distributors.

The 100% Share of Mind campaign consists of two programs: (1) an exclusivity incentive program; and (2) Amended and Restated Anheuser–Busch Wholesaler Equity Agreements.

## A.  The Exclusivity Incentive Program

Beginning on January 1, 1997, Anheuser–Busch offered financial incentives to independent distributors which choose to exclusively distribute Anheuser–Busch products. The incentives under the Exclusivity Incentive Program include: (1) a rebate on each case of Anheuser–Busch beer sold; (2) additional days of credit in which to pay for Anheuser–Busch products; and (3) reimbursement for truck painting. Under the Program, independent Anheuser–Busch wholesalers are categorized as levels "A" through "E." A wholesaler that exclusively sells Anheuser–Busch products is level "A" while a wholesaler that sells any non-Anheuser–Busch beers is an "E" level wholesaler ineligible to receive incentives.

## B.  The Amended Wholesaler Equity Agreements

Anheuser–Busch has an identical Equity Agreement with each of its independent wholesalers. Effective August 1997, Anheuser–Busch uniformly amended its Equity Agreements. The Equity Agreement in effect prior to the 1997 amendment granted each wholesaler an exclusive territory in return for which each wholesaler agreed to exercise its "best efforts" to promote, sell and service Anheuser–Busch products in the territory. The Amended Equity Agreements replaced the "best efforts" obligation with one to devote "primary efforts" to the sale of Anheuser–Busch products. The Amended

Equity Agreements do not require wholesalers to cease distributing all non-Anheuser–Busch products.

## C. Results of the 100% Share of Mind Program

Plaintiffs allege that as a result of Anheuser–Busch's 100% Share of Mind campaign, various independent Anheuser–Busch distributors terminated distribution agreements with Plaintiffs, either outright or constructively. Plaintiffs allege that five Anheuser–Busch distributors terminated their distribution agreements with St. Stan's during the period from May to October 1996. These distributors serviced territories in the Northern California area. Plaintiffs allege that five Anheuser–Busch distributors terminated distribution agreements with Lake Tahoe during the period from July to December 1996. These distributors serviced territories in the Northern California area. Plaintiffs allege that three Anheuser–Busch distributors either terminated distribution agreements with Anderson Valley or stopped efforts to sell Anderson Valley beer to retailers "within weeks" of March 1996. Plaintiffs allege that two Anheuser–Busch distributors substantially reduced or completely stopped efforts to sell El Toro beer to retailers "within weeks" of March 1996.

## D. Class Definition

Plaintiffs seek to certify this class action with the opt-out Plaintiff class defined as follows:

All craft breweries in the States of Hawaii, California, Oregon, Washington, Nevada, Utah, Idaho, Colorado, Wyoming, Montana, Alaska, and Arizona, who, between March 1, 1996 and the present, (i) had existing beer distributor/wholesaler agreements terminated by distributors who also had wholesaler agreements with Defendant Anheuser–Busch ("A–B distributors"), and/or (ii) had existing beer distributor/wholesaler agreements constructively terminated by A–B distributors, and/or (iii) were refused services by A–B distributors. Excluded from the Class are all craft breweries in which Defendant has either

an equity interest or master distribution rights.

According to Plaintiffs, the term "craft brewery" is a term of art defined by the Institute for Brewing Studies ("IBS") as a brewery that: (1) possesses a Federal Brewer's Notice; (2) brews at least 90 percent of beer sold using no more than 10 percent corn, rice or refined sugar adjunct, of any form with certain exceptions; (3) does not use artificial colors, artificial flavors, or any processing aids that combine to become part of the final beer product, with the exception of certain fruit and honey beers; and (4) is not more than one-third owned (or the economic equivalent) by another company of greater than $50 million revenue that is not itself a craft brewer. Plaintiffs define beer as "beer, ale, porter, stout, and other similar fermented beverages of any name or description containing one-half of one percent or more of alcohol by volume, brewed or produced from malt, wholly or in part, or from any substitute therefor." Finally, Plaintiffs define craft beer as "any beer produced by a craft brewery."

## II. LEGAL STANDARD

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed. R.Civ.P. 23(c). To maintain an action as a class action, Plaintiffs must meet the requirements of both Rule 23(a) and 23(b). *See* Fed.R.Civ.P. 23; *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)(plaintiff bears the burden of establishing the prerequisites of Fed.R.Civ.P. 23(a)); *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 661 (N.D.Cal.1976)(burden of establishing 23(a) and 23(b) requirements for certifying a class action "lies with the party seeking certification").

Rule 23(a) establishes four prerequisites for every class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative par-

ties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(1)–(4).

In addition to satisfying the prerequisites of Rule 23(a), parties seeking class certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(3) requires a finding by the court that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3).

## III. DISCUSSION

Plaintiffs argue that this action should be maintained as a class action because it meets the four prerequisites of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A. Rule 23(a)

Rule 23(a) requires that all class actions meet the standards of numerosity, commonality, typicality, and adequacy of representation.

### 1. Numerosity

■ To meet this requirement, the class must be so numerous that joinder of all members individually is impracticable. Impracticability is not the same as impossibility: it need not be shown that the number is so large that it would be impossible to join every class member. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964); *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). No exact numerical cut-off can be stated. Rather, the specific facts of each case must be examined. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

In this action, Plaintiffs allege that as many as 92 craft brewers might be members of the class. Anheuser–Busch argues that the record indicates less than 20 brewers who meet the class definition. Furthermore, Anheuser–Busch points to proposed classes with as many as 350 members that were

found to be practicable and therefore not entitled to certification.

■ The Court determines that the class in this action meets the numerosity requirement. While there is some question as to exactly how many class members exist, the record reflects that there are more than a dozen. In addition, those class members are spread within a 12–state region. Joinder of numerous plaintiffs from such a large area is impracticable.

### 2. Commonality

■ To meet this requirement, there must be questions of law or fact common to the class. "The fact that there is some factual variation among the class grievances will not defeat a class action ... A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1017–18 (7th Cir.1992). Although commonality is somewhat related to the typicality requirement, discussed below, " '[c]ommonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff ...." *Hassine v. Jeffes,* 846 F.2d 169, 177 n. 4 (3d Cir.1988).

■ The Court has previously determined that in this action there are numerous questions of fact common to the class. *See* Order Consolidating Cases and Appointing Co-Lead Counsel, dated Jan. 7, 1998, at 4–5. These questions involve the conception and implementation of Anheuser–Busch's 100% Share of Mind campaign. Therefore, the commonality requirement of Rule 23(a)(2) is met.

### 3. Typicality

■ To meet this requirement, the "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. The claims of the purported class representative need

not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The test "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508.

■ In this action, Anheuser–Busch argues that none of the four Plaintiffs is typical. Anheuser–Busch correctly points out that Lake Tahoe, which does not possess a Federal Brewer's Notice, does not fall within the definition of "craft brewer" offered by Plaintiffs. However, the Court determines that the four Plaintiffs are collectively typical of the class members. Among them, they possess the same interest and allege to have suffered the same injury as the members of the class they seek to represent.

### 4. Adequacy of Representation

■ To meet this requirement, the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed.R.Civ.P. 23(a)(4). If the members of a class are to be conclusively bound by the judgment in an action prosecuted by a "representative," they must have adequate representation. *See Richards v. Jefferson County, Alabama,* 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *see also Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir.1994).

■ The representation is adequate if: (1) the attorney representing the class is qualified and competent; and (2) the class representatives are not disqualified by interests antagonistic to the remainder of the class. *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

#### a. Adequacy of Class Counsel

Defendants do not dispute the competence of Plaintiffs' counsel, and the Court notes that Plaintiffs' counsel have ample experience in bringing class actions.

#### b. Adequacy of Representatives

■ The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997)(citing *Falcon,* 457 U.S. at 157–58, 102 S.Ct. 2364). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.,* 117 S.Ct. at 2250–51 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). To assure "adequate" representation, the class representative's personal claim must not be inconsistent with the claims of other members of the class. *See Amchem Products,* 117 S.Ct. at 2251.

In this action, Anheuser–Busch contends that intra-class conflicts should preclude certification. Anheuser–Busch is correct. Plaintiffs and the proposed class members vigorously compete with one another for distribution of their beer products. Distributors cannot service every brand of beer. Competition for the distribution services of beer distributors results in a conflict that goes to the merits of this litigation. *See* Newberg & Conte, 4 *Newberg on Class Actions,* § 18.17, at 18–59 (3d ed.1992)("a conflict that will preclude adequate representation must be one that goes to the merits of the litigation"). As a result, Plaintiffs are not adequate representatives of the proposed class. *See Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541, 546 (E.D.Pa.1976)("Because of the nature of this class, composed of members who have identical interests in exploiting the limited market for their own benefit, we conclude that the interests of the named plaintiffs are inherently antagonistic, rendering adequate representation unlikely"); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43 (D.Del.1974)("the individual interests will of necessity vie with each other in establishing that they, as opposed to their neighboring competitors, would have enjoyed a larger portion of the allegedly lost business");

*Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.,* 162 F.R.D. 471, 478–79 (E.D.Pa. 1995)("the named representative's proof of loss necessarily limits or intrudes upon every other member's ability to prove the same").

### B. Rule 23(b)

Assuming *arguendo* that Plaintiffs meet the adequacy requirement of Rule 23(a)(4), the Court finds that Plaintiffs have nevertheless failed to meet the additional requirements of Rule 23(b). Plaintiffs contend that this action qualifies for class action status only under the third alternative of that Rule. To qualify for certification under Rule 23(b)(3), a class action must meet the following two requirements: (1) common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's examination of the predominance and superiority criteria: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(A)–(D).

#### 1. Predominance

█ In this action, individual questions overwhelmingly predominate any common questions of law or fact. A brief consideration of Plaintiffs' claims against Anheuser–Busch bears this out.

#### a. Exclusive Dealing (Claims 1 and 2)

Plaintiffs' first and second causes of action allege that Anheuser–Busch and certain of its independent distributors have engaged in exclusive dealing. Courts "analyze challenges to exclusive dealing arrangements under the antitrust rule of reason." *Omega Environmental, Inc. v. Gilbarco, Inc.,* 127 F.3d 1157,

1162 (9th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 46, 142 L.Ed.2d 36 (1998) (citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.,* 676 F.2d 1291, 1302 (9th Cir.1982)). The rule of reason as applied to this case would require the Court to individually analyze each relationship between a distributor and Anheuser–Busch. The 12–state region encompassed by Plaintiffs' class definition implicates 150 independent Anheuser–Busch distributors. Clearly, individual questions would predominate in such an analysis.

Furthermore, the plethora of possible reasons why an individual distributor chose to discontinue distribution of a particular brand of beer introduces myriad individual questions. In each instance where a craft brewer was terminated or refused distribution by an Anheuser–Busch distributor, any or all of the following business reasons may have been involved: brand performance; change in company business philosophy; pricing; product quality; lack of brewer support; inventory or delivery problems; market saturation; and pressure by Anheuser–Busch. Resolving the question of why a particular craft beer was dropped by a distributor requires analysis of individual issues.

In addition, the variety and availability of distribution alternatives in each local area will necessitate a separate inquiry for each area. Individual questions will certainly predominate over common questions in such inquiries.

#### b. Concerted Refusal to Deal and Group Boycott (Claims 3 and 4)

Plaintiffs argue strenuously that their concerted refusal to deal and group boycott causes of action constitute *per se* statutory violations that involve predominantly common questions. This argument is without merit. In this action, the relationships at issue are vertical—not horizontal—in nature. Although under the Sherman Act "any agreement by a group of competitors to boycott a particular buyer or group of buyers is illegal *per se,*" *Federal Maritime Commission v. Aktiebolaget Svenska Amerika Linien,* 390 U.S. 238, 250, 88 S.Ct. 1005, 19

L.Ed.2d 1071 (1968), the present action does not involve an agreement by a group. Rather, this action involves a series of agreements between Anheuser–Busch and individual independent distributors.

Plaintiffs allege that Anheuser–Busch has forced its independent distributors to become exclusive. This allegation, however, implicates the vertical relationships between Anheuser–Busch and each independent distributor. Determining whether Anheuser–Busch forced each independent distributor to act as it did would necessarily require separate analyses of the distributors' various decisions regarding whether to distribute each craft beer. Individual questions certainly predominate in such an inquiry.

### c. Attempted Monopolization (Claim 5)

Plaintiffs allege that Anheuser–Busch has attempted to monopolize the beer industry in the relevant market. "[I]t is generally required that to demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).

As discussed above, an analysis of Anheuser–Busch's conduct will require a distributor-by-distributor and a brewer-by-brewer approach. This is so particularly as regards the proof of a probability of achieving monopoly power. "[D]emonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Id.* at 459, 113 S.Ct. 884. While some courts have held that "determination of the relevant market, either geographic or product, is almost exclusively a fact question for the jury," *Sollenbarger v. Mountain States Telephone & Telegraph*, 121 F.R.D. 417, 424 (D.N.M. 1988), for purposes of determining class certification, the Court must identify the sub-

stantive issues raised by the cause of action and then inquire into the proof relevant to each issue, *see Simer v. Rios*, 661 F.2d 655, 672 (7th Cir.1981); *Expanding Energy, Inc. v. Koch Industries, Inc.*, 132 F.R.D. 180, 183 (S.D.Tex.1990). Even if the trier of fact ultimately determines that the relevant geographic market is the entire 12–state region identified in the class definition, the proof that will be relevant to that determination will be based on facts specific to each local area. The Court determines that, overall, individual questions will predominate in the determination of Plaintiffs' attempted monopolization claim, as they will in the determination of Plaintiffs' exclusive dealing and concerted refusal to deal and group boycott claims.

### 2. Superiority

The Court is satisfied that the best method for proceeding with the present action is as a consolidated case rather than as a class action.

### IV. CONCLUSION

Plaintiffs are not typical of the class they seek to represent because of intra-class conflicts stemming from the Plaintiffs' competitive relationship. In addition, individual questions of fact predominate in this action. Therefore, the Court DENIES without prejudice Plaintiffs' motion for class certification (docket no. 32).[1]

IT IS SO ORDERED.

---

**1.** Concurrently with their reply brief, Plaintiffs submitted evidentiary objections to declarations submitted by Anheuser–Busch in opposition to the motion for class certification (docket no. 58).

As the Court did not consider any of the evidence to which Plaintiffs objected in its determination of the present motion, a ruling on Plaintiffs' objection is unnecessary.